[Civ. No. 712. First Appellate District.—May 30, 1910.]

## TUOLUMNE WATER POWER COMPANY, a Corporation, Respondent, v. W. A. FREDERICK, Appellant.

EMINENT DOMAIN—CONDEMNING RIGHT OF WAY FOR ELECTRIC POWER LINE—PUBLIC USE—SUFFICIENCY OF COMPLAINT.—A complaint in an action to condemn a right of way over defendant's land for an electric power line, which states the name of the corporation in charge of the alleged public use, and that it was organized to furnish electric power, light and heat to counties, cities, towns and villages, and the inhabitants thereof, and to acquire, by right of eminent domain, rights of way over lands for the transmission of electric energy and power, and that plaintiff seeks to condemn the alleged right of way for a public use, to wit, the transmission of electric energy and power for public sale, and that plaintiff is in charge of said public use, and of said alleged rights, is sufficient as against a general demurrer.

ID.—MEAGER COMPLAINT AS TO FACTS SHOWING "PUBLIC USE"—ABSENCE OF SPECIAL DEMURRER THERETO.—Although the complaint is not a model in its meager statement of facts showing that the use is a "public use," yet it is sufficient in the absence of a special demurrer on that ground.

ID.—INTENTION OF PLEADER—SALE TO "PUBLIC GENERALLY."—Construing the allegations of the complaint together, it is evident that the pleader, though alleging its purpose to condemn the right of way for the transmission of electric energy and power "for public sale," intended to allege its purpose to condemn the same for the transmission of electric energy and power for "sale to the public generally."

ID. — MEANING OF "PUBLIC USE" — JUDICIAL QUESTION — LEGISLATIVE DECLARATION.—The term "public use" is of indefinite signification. While what is a public use is a judicial question, yet, in a doubtful case, the legislative declaration is of great persuasive force.

ID.—DECLARATION IN STATUTE AS TO "PUBLIC USES"—"ELECTRIC POWER LINES" — RIGHT OF WAY FOR "PUBLIC USES."—The statute authorizes the right of eminent domain in behalf of certain public "uses," among which are included "electric power lines." To condemn a right of way for an electric power line, for the transmission of electricity to be sold to the public, to furnish power, light and heat to counties, cities, towns and villages, and the inhabitants thereof, is clearly for "public uses," within the declaration of the statute.

ID.—CONTRACTUAL OBLIGATION NOT PREREQUISITE TO CONDEMNATION— SPECIAL DEMURRER.—A special demurrer to the complaint, on the ground that it does not appear therefrom that the plaintiff is under any contract to furnish electricity to any person, or that it has a franchise to furnish electricity to any counties, cities or villages through which its proposed line is to run, is not tenable. It is not necessary that the plaintiff seeking to condemn a right of way should have made a contract to furnish electric power before it had installed its plant and procured the right of way for its line.

ID.—EXISTING FRANCHISE NOT REQUIRED.—To prevent the plaintiff from exercising the right of eminent domain until it shall have obtained a franchise from some city or village, or made a contract to furnish its product to some city or village, would be to deprive it of the means by which it would be enabled to construct its works and be put in a position to make said contract.

ID.—NARROW CONSTRUCTION OF "PUBLIC USE" FOR ELECTRIC POWER IMPROPER.—In view of the present use of electric power for numerous public purposes, which has become so general that it is almost a necessity of our modern civilization, and considering the great enterprises of the west, the courts should not give a narrow and restricted construction of the words "public use" as used by the legislature, or in the constitution.

ID.—AMOUNT OF DAMAGES TO DEFENDANT — CONCLUSIVE VERDICT.— Where the jury were fairly and fully instructed as to the various matters to be considered in arriving at the amount of damages to defendant, their verdict upon the evidence as to such amount is conclusive.

ID.—EVIDENCE—TESTIMONY OF PLAINTIFF'S SURVEYOR—COURSE OF ELECTRIC LINE — IMMATERIAL CROSS-EXAMINATION — COUNTY ROADS. — Where plaintiff's surveyor and civil engineer testified in chief as to where the electric line commenced and its general course, and on cross-examination stated that after it reached Alameda county

it runs on a private line, except over county roads, a further question, "How many county roads does it cross over?" was properly excluded as immaterial.

ID.—SCOPE OF CROSS-EXAMINATION — DISCRETION OF COURT — MATERIALITY AND PREJUDICIAL ERROR MUST APPEAR.—The cross-examination of a witness and the extent to which it may be carried rests largely in the discretion of the trial court. In order to predicate error on its refusal to allow "a question thereon, it must appear not only that the evidence sought was relevant and material, but also that the materiality is so evident that injury will be presumed from its exclusion."

ID. — INSTRUCTION AS TO LOCATION OF ELECTRIC LINE — BURDEN OF PROOF.—The court properly instructed the jury to the effect that the plaintiff, under the law, has the right to construct its line in the manner and place it deems best, provided that the location is made in a manner most compatible with the greatest public good and the least possible private injury; and that in case it is claimed that the plaintiff has not so located its line, the proof to the contrary must be clear and convincing.

ID.—PRESUMPTION OF CORRECT ACTS BY CONDEMNING PLAINTIFF—BURDEN UPON OWNERS.—In the absence of evidence to the contrary, the acts of the plaintiff in exercising a public function in surveying its line, and locating the land to be condemned, must be presumed to be correct and lawful, and to be the best choice for the public; and if this occasions peculiar and unnecessary damage to the owners of the property, the proof thereof must come from them, and ought to be clear and convincing, since otherwise no location could be effected.

ID.—INSTRUCTION AS TO BURDEN OF PROOF OF VALUE OF LAND TAKEN—NOMINAL DAMAGE—VERDICT FOR SUBSTANTIAL DAMAGES.—An instruction that the burden of proof as to the value of the lands of defendant was upon the defendant, and that unless he has shown by sufficient proof that he will be damaged by the erection of the towers and transmission line thereupon, as claimed in the complaint, "then he is entitled only to a nominal damage at your hands," was correct as to the burden of proof, and did not tell the jury that the plaintiff was entitled only to nominal damage. The instructions as to damages were full and complete; and where the jury by their verdict gave only substantial damages, they evidently were not misled as to nominal damage.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. William H. Waste, Judge.

The facts are stated in the opinion of the court.

F. J. Castelhun, for Appellant. Archibald Barnard and Crittenden Thornton, *Amici Curiae*, also for Appellant, on Petition for Hearing in Supreme Court.

Chickering & Gregory, for Respondent.

COOPER, P. J.—This action was brought to condemn a right of way over defendant's lands for an electric power line. The case was tried with the aid of a jury, and a verdict rendered fixing the amount of defendant's damages at $450. Judgment was accordingly entered in favor of plaintiff as prayed and fixing the damages for the right of way at the sum so found by the jury.

Defendant prosecutes this appeal from the judgment and order.

The first contention made by defendant is that the court erred in overruling his demurrer to the complaint. His argument is that the complaint does not show that the use for which it is sought to condemn the property is a public use. The Code of Civil Procedure provides (section 1238) as follows:

"Subject to the provision of this title the right of eminent domain may be exercised in behalf of the following public uses . . .

"12. Canals, reservoirs, dams, ditches, flumes, aqueducts and pipes and outlets natural or otherwise for supplying, storing, and discharging water for the operation of machinery for the purpose of generating and transmitting electricity for the supply of mines, quarries, railroads, tramways, mills and factories with electric power; and also for the applying of electricity to light or heat mines, quarries, mills, factories, incorporated cities and counties, villages or towns; and also for furnishing electricity for lighting, heating or power purposes to individuals or corporations, together with lands, buildings and all other improvements in or upon which to erect, install, place, use or operate machinery for the purpose of generating and transmitting electricity for any of the purposes or uses above set forth.

"13. Electric-power lines, electric-heat lines, and electric light, heat and power lines."

Section 1241 of said code provides that before the property can be taken it must appear, first, that the use to which it

is to be applied is a use authorized by law; second, that the taking is necessary to such use.

In condemnation proceedings the essentials required in the complaint are set forth in Code of Civil Procedure, section 1244, and after requiring that the name of the corporation or person in charge of the public use must be stated, it is provided that the complaint must contain "a statement of the right of plaintiff." This phrase evidently means a state- · ment of the facts sufficient to show that the plaintiff is authorized to maintain the condemnation suit.

The complaint in this case contains the name of the corporation in charge of the alleged public use, and states that the corporation was organized and its purpose, among other things, was "to furnish electric power, light and heat to counties, cities, villages and towns, and the inhabitants thereof, and to acquire by right of eminent domain rights of way over lands for the transmission of electric energy and power." The complaint further avers that the plaintiff seeks to condemn the right of way for a public use, to wit, "the construction, maintenance and operation of an' electric power-line for the transmission of electric energy or power for public sale, which said electric power line is to be of the character described in this complaint." This is followed by a statement that the plaintiff is in charge of said public use and the right to construct, operate and maintain an electric power line for such purpose, and to acquire and maintain a right of way for the same. While the complaint is certainly not a model as to the statement of facts showing that the use is a public use, yet it is sufficient when attacked by a general demurrer. It is evident the pleader intended to allege that its purpose was to engage in the operation of an electric power line for the transmission of electric energy and power for sale to the public generally; and although the words "for public sale" are used, we must look to all the allegations of the complaint in order to arrive at the solution of the question as to whether or not it states facts sufficient to constitute a cause of action. Particularly is this so in the face of the fact that the defendant demurred to the complaint upon five special grounds, but did not intimate in either of the grounds that it could not be ascertained from the complaint that the use for which the right of way was sought was a public use.

The term "public use" is a term of indefinite signification. The statute authorizes the right of eminent domain in behalf of certain public uses, among which are included "electric power lines." While what is a public use is a judicial question, yet in a doubtful case the legislative declaration is of great persuasive force. (*Lindsay I. Co.* v. *Mehrtens,* 97 Cal. 676, [32 Pac. 802] ; *Walker* v. *Shasta Power Co.,* 160 Fed. 856, [87 C. C. A. 660].) It fairly appears from the complaint in this case that the plaintiff sought the right of way for an electric power line for the transmission of electricity, to be sold to the public to furnish power, light and heat to counties, cities, villages and towns, and the inhabitants thereof. Clearly such are public uses, and are expressly so declared to be in the statute.

The main argument as to the special demurrer is that it does not appear, and cannot be ascertained from the complaint, that the plaintiff is under any contractual obligation to furnish electricity to any person for any purpose, or that it has a franchise to furnish electricity to any counties, cities or villages through which the proposed line is to run. It is not necessary that the plaintiff should have made a contract to furnish electric power before it had installed its plant and procured the right of way for its line. To prevent the plaintiff from exercising the right of eminent domain until it shall have obtained a franchise from some city or village, or made a contract to furnish its product to some city or village, would be to deprive it of the means by which it would be enabled to construct its works and be in a position to make a contract. (*Minn. Canal Co.* v. *Pratt,* 101 Minn. 197, [112 N. W. 395].) The legislature representing the people has provided that the right of eminent domain may be exercised for electric power lines for public use. At the present day the use of electric power, not only for lighting streets and private houses, but also for the purpose of moving railroad cars, street-cars, machinery for manufacturing purposes and for use in mines and smelters, has become so general that it is almost a necessity of our modern civilization. The courts would not be aiding the great enterprises of the west by adopting a narrow and restricted view of the meaning of the words "public use" as used by the legislature and in our constitution.

The evidence is sufficient to show that the plaintiff desires to construct its line for public and not for private use. The jury were fully and fairly instructed as to the various matters to be considered in arriving at the amount of damage to defendant, and their verdict upon the evidence is conclusive.

Appellant in his brief enumerates many alleged errors in the rulings of the court upon the admission or rejection of evidence which he characterizes as "glaring errors." The first one of these alleged errors—and presumably the most important in his estimation—is as to a question asked of the witness Zoffmann. Zoffmann testified in direct examination that he was a surveyor and civil engineer; that he had been engaged in running the electric line for plaintiff. He then described the point where the line commences and its general course, and stated that in its course it crosses the counties of Calaveras, Stanislaus, San Joaquin and the lower portion of Alameda county, and runs to the Mission San Jose. He then described the general nature of the towers desired to be erected for the purpose of the power line, and particularly the towers desired to be erected on the defendant's land, and the distance of the proposed cable to the ground as it would pass over defendant's land. He then testified in cross-examination, in answer to questions asked by defendant's counsel, that after the line enters Alameda county it runs entirely on a private line with the exception of crossing over county roads. The defendant's counsel then asked the witness the question: "How many county roads does it cross over?" The question was objected to upon the ground that it was incompetent, irrelevant and immaterial, and the judge of the trial court sustained the objection, at the same time stating that he did not see the materiality of it. Like the trial judge, we fail to see how it was material to the defendant as to the number of county roads the plaintiff's line crossed. It could not aid in the solution of the question before the court as to the plaintiff's right to condemn the right of way over defendant's land, and at the places where its proposed line was to cross the defendant's land, by showing that it crossed many public roads at other places than on defendant's land. Counsel has not even given us a reason why the evidence sought was material. He con-

tents himself with saying, "Defendant submits that the question was proper cross-examination." It is elementary that the cross-examination of a witness, and the extent to which such cross-examination may be carried, rest largely in the discretion of the trial court, and that in order to predicate error upon the refusal to allow a question to be asked on such cross-examination it must appear that the evidence sought was relevant and material; and not only this, but that its materiality is so evident that injury will be presumed from its exclusion.

The other objections and alleged errors, while several in number, are of similar import. It is sufficient to say that we have examined them, and find none of them of sufficient importance to justify discussion.

Complaint is made that the court instructed the jury to the effect that the plaintiff under the law has the right to construct its line in the manner and place it deems best, provided it uses the most available route, and provided that the location is made in a manner most compatible with the greatest public good and the least private injury; and that in case it is claimed that the plaintiff has not so located its line, the proof must be clear and convincing. In our opinion the rule is correctly stated in the instruction. It is in almost the identical language used by the chief justice in *City of Pasadena* v. *Stimson,* 91 Cal. 255, [27 Pac. 604], where it is said: "The state, or its agents in charge of a public use, must necessarily survey and locate the land to be taken, and are by statute expressly authorized to do so. (Code Civ. Proc., sec. 1242.) Exercising as they do a public function under express statutory authority, it would seem that in this particular their acts should, in the absence of evidence to the contrary, be presumed correct and lawful. The selection of a particular route is committed in the first instance to the person in charge of the use, and unless there is something to show an abuse of discretion, the propriety of his selection ought not to be questioned; for certainly it must be presumed that the state or its agent has made the best choice for the public, and if this occasions peculiar and unnecessary damage to the owners of the property affected, the proof of such damage should come from them. And we think that when an attempt is made to show that the loca-

tion made is unnecessarily injurious, the proof ought to be clear and convincing; for otherwise no location could ever be made. If the first selection made on behalf of the public could be set aside on slight or doubtful proof, a second selection would be set aside in the same manner, and so *ad infinitum*. The improvement could never be secured, because whatever location was proposed it could be defeated by showing another just as good." (See further *San Francisco & S. J. V. Ry. Co. v. Leviston*, 134 Cal. 413, [66 Pac. 473]; *Kansas Ry. Co. v. Northwestern Coal Co.*, 161 Mo. 288, [84 Am. St. Rep. 717, 61 S. W. 684].)

Complaint is made of the eleventh· instruction given by the court to the jury at the plaintiff's request. The instruction is as follows: "I charge you that the burden of proof as to the value of the lands of defendant was upon the defendant. Unless he has shown you by sufficient proof that he will be damaged by the erection of said towers and transmission line as in said complaint contained, then that he is entitled only to a nominal damage at your hands."

The rule was correctly stated to the effect that the burden of proof was upon the defendant to prove the damages he would sustain. The court did not, as suggested by counsel, tell the jury that the plaintiff was entitled to only nominal damages. The instructions elsewhere fully covered the subject, and stated to the jury the matters and things to be considered by them in determining the amount of damages to which the defendant would be entitled. And not only this, but by their verdict it is shown that they gave the defendant substantial and not nominal damages.

Other instructions are criticised, but we find no substantial error in the giving or refusing any instruction to which our attention is called. The court seems to have given to the jury a full and fair statement of the law applicable to the issues and the questions which were before the court.

The judgment and order are affirmed.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 28, 1910.