[Civ. No. 1117.    Third Appellate District.—March 17, 1914.]

## VALLEJO AND NORTHERN RAILROAD COMPANY (a Corporation), Respondent, v. HOME SAVINGS BANK (a Corporation) et al., Appellants.

EMINENT DOMAIN—CONDEMNATION OF LAND FOR RAILROAD DEPOT—SUF-FICIENCY OF COMPLAINT.—In this action to condemn land for a railroad depot the complaint meets the requirement of section 1244 of the Code of Civil Procedure providing what the complaint in eminent domain must contain, and it is not demurrable on the grounds that it fails to allege that other land owned by the railroad company is inadequate for a depot, or that the road is in operation, or why the land is necessary, or that any necessity exists for any depot at the place, or that the plaintiff has a franchise over the streets of the municipality, or that the location of the depot is such as to produce the least private injury.

ID.—AMOUNT OF LAND NECESSARY—EXPERT TESTIMONY.—In such action expert testimony is admissible to determine the amount of land requisite for depot purposes.

ID.—SIZE AND LOCATION OF LOT FOR DEPOT—DISCRETION OF RAILROAD COMPANY.—In the determination of the size and location of lots for depots, considerable discretion must be accorded to railroad corporations serving a public purpose, subject to the qualification that their action must not be captious or arbitrary nor unduly invade the private right of property.

ID.—FRANCHISE OVER STREETS—WHETHER ESSENTIAL BEFORE CONDEM-NATION PROCEEDINGS.—It is unnecessary in such action that the railroad company should have first obtained a franchise over the

streets of the municipality wherein the land sought to be condemned is situated.

ID.—AMOUNT OF PROPERTY NECESSARY TO CONDEMN—EVIDENCE OF SIZE OF OTHER DEPOTS.—It is proper in such action to exclude evidence offered by the defendant of the size and character of buildings of other railroads used for depots, in the absence of any offer to show that the circumstances and conditions surrounding such buildings are similar to those involved in the case under consideration and that the areas of such buildings are sufficient for the purposes of such railroads.

ID.—EVIDENCE OF SIZE AND LOCATION OF STREETS—INADMISSIBILITY OF MAP.—In such action the defendants cannot show the general size and location of the principal streets of the municipality, if material, by introducing a map as to which the city engineer testifies that he did not make it and that it is inaccurate.

ID.—STRIKING OUT ANSWER OF WITNESS—HARMLESS ERROR.—It is improper to grant a motion to strike out an answer of a witness when no ojection has been made to the question; but the error is harmless if thereafter the witness makes substantially the same statement.

ID.—VALUE OF IMPROVEMENTS ON CONDEMNED PROPERTY AS SEPARATE FROM LAND.—In an action to condemn property for a railroad depot evidence of the market value of the improvements on the property sought to be condemned, separate from the land, is properly excluded; the evidence must go to the market value of the property as a whole.

ID.—EXPERT WITNESS—COMPETENCY TO TESTIFY AS TO VALUE OF PROPERTY.—A witness who has resided forty years in the municipality wherein the land sought to be condemned is situated, and who has been engaged in the banking business for fifty years, is competent to testify as to the market value of the property, although he has not examined the interior of a building thereon.

ID.—SPECIAL ISSUES—REFUSAL OF COURT TO SUBMIT TO JURY.—In refusing to submit to the jury certain special issues propounded by the defendants, the court does not abuse its discretion under section 625 of the Code of Civil Procedure as amended in 1905, especially when some of the questions are not within the issues, some involve a question of law, and the others are covered by the questions which are submitted.

ID.—DAMAGES FOR TAKING PROPERTY—CONSIDERATION OF FUTURE GROWTH OF COMMUNITY.—In an action by a railroad company to condemn property for a depot, an instruction authorizing the jury to take into consideration future demands "that may fairly be anticipated on account of the future growth of the surrounding community," is proper; it being alleged that the property is necessary for the purposes of the plaintiff, and it being a fair infer-

ence from the testimony that the property in question is situated in a prosperous and growing city.

ID.—VALUE OF PROPERTY—AMOUNT WHICH PLAINTIFF CAN AFFORD TO PAY.—A suggestion in an instruction to the jury in such action that an opinion as to the value of the property sought to be condemned cannot be based upon what the plaintiff can afford to pay for the property, is not prejudicial to the defendant.

ID.—VERDICT—SUFFICIENCY AS SHOWING TAKING FOR PUBLIC USE.—The verdict of the jury in such case is not defective in finding that the taking is necessary for the use of the plaintiff instead of for a public use, where it is found that the taking is necessary for the use of plaintiff for a permanent freight and passenger building in connection with the operation and maintenance of the railroad described in the complaint.

APPEAL from a judgment of the Superior Court of Yolo County. N. A. Hawkins, Judge.

The facts are stated in the opinion of the court.

C. W. Thomas, C. W. Thomas, Jr., Grover C. Julian, and Ernest Weyand, for Appellants.

T. T. C. Gregory, Elmer W. Armfield, and C. J. Goodell, for Respondent.

BURNETT, J.—The action was to condemn a certain parcel of land in the city of Woodland for the construction of a general freight and passenger depot. The owner was awarded the sum of four thousand five hundred dollars for the property by the jury trying the action. This amount, including costs, was paid into court by plaintiff and final judgment of condemnation was duly rendered and entered.

The complaint was attacked by a general and special demurrer and many reasons are assigned why the demurrer should have been sustained. It is stated that the map accompanying the complaint shows that the railroad company already owned two large tracts adjacent to the tract sought to be condemned and there is no allegation that these were insufficient or inadequate for the purpose of a freight and passenger depot, there is no allegation that the road was in operation or why this parcel is necessary or that any necessity exists for any depot at the place, or that the plaintiff has a fran-

chise to pass over the streets of Woodland and the complaint is silent as to the consideration of location in a manner so as to produce "the least private injury." To these specifications an answer is found in *Rialto Irrigation District* v. *Brandon,* 103 Cal. 384, [37 Pac. 484] ; *Central Pacific Ry. Co.* v. *Feldman,* 152 Cal. 303, [92 Pac. 948] ; and *Northern Light etc. Co.* v. *Stacher,* 13 Cal. App. 404, [109 Pac. 896]. An examination of the complaint here shows that it meets the requirement of section 1244 of the Code of Civil Procedure providing what the complaint in eminent domain must contain, and the pleading is as complete as the one approved in the Northern Light Co. case.

Summarizing the complaint, it appears that the plaintiff is a railroad corporation, that certain named parties are the owners and claimants of the property, that the purposes for which plaintiff was incorporated are fully set forth, that it is the specific purpose of plaintiff "to construct and build along the routes and between the places, as hereinafter mentioned, a general railroad, having a standard gauge, and single or double or more tracks and the places from and to which the said railroad is intended to be run, and all the intermediate branches of the same, and the estimated length of the said railroad and of the said intermediate branches and the location, general route and termini of said railroad are as follows" (giving them in detail), that a map, as required by the statute, accompanies the complaint; "That for a permanent freight and passenger depot building necessary for and in the operation and maintenance of said railroad plaintiff requires that certain real property" (describing it) ; "that the real property herein sought to be acquired includes the whole of an entire parcel or tract of land. . . . That said real property hereinbefore described and sought to be condemned is required for a public use, to wit: to enable plaintiff to construct and maintain a railroad and to operate the same and the appendages thereof as a common carrier of passengers and freight for hire. . . . That said real property hereinbefore described and sought to be condemned will give and furnish the most practicable location for and the same is necessary in the building, construction, maintenance and operation of said railroad. That neither the whole nor any part of said

property hereinbefore described and sought to be condemned, has heretofore been appropriated to any public use."

Appellant contends that "the proof failed to show any necessity for taking this land. The most that can be said of the evidence offered by plaintiff is that it showed that plaintiff had planned to build a railroad to Woodland."

Mr. P. A. Haviland, chief engineer of the plaintiff, testified that the lot would be used "for the general purpose of a railway and passenger depot. It will have to be divided into several offices as waiting rooms for the ladies, and gentlemen's waiting room, ticket offices, telegraph offices, baggage rooms and various other offices that are necessary for the transaction of the general business in relation to a freight and passenger depot, freight offices" and furthermore, that the lot sought to be condemned is required and necessary for the operation of plaintiff's railroad.

T. T. C. Gregory, the president of plaintiff corporation, also testified that this lot is "necessary for station purposes" and he assigned various reasons for his opinion, which reasons seem to be entirely plausible.

Appellants objected to the method of proof but the determination of the amount of land required for such purposes must depend largely upon the opinion of experts. It is difficult to understand how the question could be settled without such assistance. The jury must, of course, determine the issue but the aid of experts seems especially appropriate as to how much land is required for depot purposes at the terminal point for a railroad. This is a matter largely of technical knowledge and skill and while the jury are not bound, of course, by the opinion of the experts, such assistance is generally needed. No case has been cited in which the point was made but the matter seems too plain to require authority. Probably in nearly every condemnation suit such evidence is received and usually without objection.

It may be added that, in the determination of the size and location of lots for depots, considerable discretion must be accorded to railroad corporations serving a public purpose, subject to the qualification that their action must not be captious or arbitrary nor unduly invade the private right of property.

In answer to the contention of appellants that no proof was offered that plaintiff had a franchise over the streets of Woodland, it is sufficient to refer to *California Southern R. R. Co.* v. *Kimball,* 61 Cal. 90, and *Tuolumne Water Power Co.* v. *Frederick,* 13 Cal. App. 498, [110 Pac. 134]. In the former it is said: ''Conceding that none of the public streets of San Diego can be used by a railroad company, unless the right to use the same is granted by the city, in the manner prescribed by law, it does not seem to us to follow that an action to condemn whatever right the owners of lands lying adjacent to said streets may have therein cannot be maintained until after said city has granted a right of way over said streets. If, as the appellants contend, the streets cannot be used by the plaintiff until after it has acquired the right to use them from the city, as well as from the owners of adjacent lands, we are unable to see why the grant from the city should be first obtained.''

We can see no distinction in this respect between an action to condemn a right of way and one to acquire the fee for depot purposes.

It is claimed that the court erred in refusing to allow defendants to prove the size and character of the buildings necessary for depot sites of other railroads. The question is presented by the ruling of the court sustaining an objection to this question: ''Will you state to the jury what those measurements are?''—referring to the passenger depot of the Southern Pacific Company at Woodland, and to another similar question relating to the Northern Electric depot at 8th and J streets, Sacramento. The questions were ''objected to as incompetent, immaterial, irrelevant, not responsive to any issues in the pleadings, and it is not shown that this witness is at all an expert, not shown that the purposes of the Southern Pacific depot at Woodland are the same, it is not shown they are terminals, no connection at all between the station house of the Southern Pacific and the station house of this particular road.'' It is clear that appellants should have shown or offered to show that the circumstances and conditions surrounding these two instances were similar to those involved herein and that the said areas were sufficient for the purposes of the respective companies, in order to make such evidence admissible. If

such connection had been made or promised, it may be that the evidence should have been admitted as a basis for comparison in estimating the necessities of plaintiff, but in view of the fact that plaintiff's position was fully stated in the objection and appellants made no effort nor promise to supply what was essential, we cannot hold that the ruling was erroneous.

Appellants contend that "the court erred in refusing to permit defendants to show the general size and location of the principal streets of Woodland." But, conceding the materiality of such testimony, it is apparent that appellants adopted the wrong course to prove the facts. They attempted to show them by the introduction of a certain map as to which the city engineer of Woodland testified as follows: "Q. Did you make that map? A. I did not. Q. Have you ever checked that particular map over? A. No, sir. Q. Do you know whether it is a correct and accurate map or not A. The map is not delineated—doesn't say it is a correct and accurate map. I guess I do know, it is not. Q. It is not accurate? A. No, sir. Mr. Thomas. The map shows Main and Second streets? A. Yes, sir. Mr. Gregory. Did you ever check it over for the purpose of determining its accuracy at the corner of Second and Main streets? A. I did not."

Of course, the matters attempted to be shown by the map could have been testified to by any witness familiar with the city of Woodland but it seems that no such available and admissible evidence was offered. Besides, we cannot say that the facts sought to be elicited would have thrown any light upon the issues before the jury.

One Benjamin Keehn testified that he was a carpenter and contractor and had lived in Woodland for nearly twenty-one years, and after stating that he had made an examination of the building on the property in controversy he was asked: "Will you state to the jury what you found, give a description of that property?" After some colloquy between counsel and after certain preliminary questions to the witness as to the time when he made the examination, he answered, "I found the building measured according to the measurements about 18 by 78 feet, inside the walls; and the walls seemed to be in good condition, more so com-

paratively than the other walls adjoining." A motion was made by respondent to strike out the answer and it was granted. This was erroneous, since no objection had been made to the question, but the answer could have been of little if any value, as it did not relate to the time of the issuance of the summons. Besides, the ruling could have done no harm as the witness, thereafter, made substantially the same statement as to the condition of the building.

Appellants sought by the same witness to show the market value of the improvements as separate from the realty but the court held "that the testimony must go to the market value of the property as a whole." Complaint is made of this ruling, but it was strictly in accordance with the course prescribed by the Code of Civil Procedure, section 1248, subdivision 1, as follows: "The court, jury or referee . . . must ascertain and assess: 1. The value of the property sought to be condemned, and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein; if it consists of different parcels, the value of each parcel and each estate or interest therein shall be separately assessed." It thus expressly appears that separate assessments are to be made when there are different parcels of land, and, under the familiar rule of construction, the present case is excluded by implication.

Again, in the answer of the defendants, it was alleged "that the actual or market value of said land, together with the improvements thereon, was on the 28th day of December, 1910, the sum of seven thousand dollars," and when invited by plaintiff to state separately the value of the land and of the improvements they declined to do so. Having thus refused to make separate issues they could not, of course, demand that the evidence be addressed to separate valuations, but were required to have it correspond with the issue tendered by the answer.

C. W. Bush, a witness for plaintiff, testified that he had resided in Woodland since 1869 and was president of the bank of Yolo, and had been engaged in the banking business altogether for about fifty years, and that he was familiar with the values of property in the vicinity of the lot in controversy. He estimated the market value of the Kraft property to be four thousand dollars, on December 28, 1910. The objection

made to his testimony was that he showed himself unfamiliar with the interior of the building, the witness admitting, ''I only know of its exterior appearance.'' It would have been more satisfactory if the witness had inspected the interior before testifying, as the character and condition of the im-- provements are manifestly important elements in the determination of the value of the property. However, the witness stated that he assumed the building was ''in good condition,'' and it is quite apparent that an examination of the interior would not have affected his opinion as to the market value. It may be added that he was undoubtedly qualified as an expert on the question of value.

Appellants are mistaken in their assumption that the same declared infirmity appears in the testimony of L. D. Stephens, and there can be no doubt of his competency as a witness.

The refusal of the court to submit to the jury certain special issues proposed by defendants is characterized as a violation of the duty enjoined by section 625 of the Code of Civil Procedure. But that section, as amended in 1909 (Stats. 1909, p. 193), changed the rule so as to clothe the court with discretion in the premises and it cannot be said that the discretion was abused. Besides, some of the questions were not within the issues, some involved a question of law and the others were covered by the questions which were submitted.

We find no prejudicial error in the matter of instructions.

Instruction No. 8 authorized the jury to take into consideration future demands ''that may fairly be anticipated on account of the future growth of the surrounding community'' and is within the rule as laid down in *Spring Valley W. W.* v. *Drinkhouse,* 92 Cal. 532, [28 Pac. 681]. The allegation that the lot is necessary for the purposes of plaintiff is sufficient to justify such consideration, and while no specific question was directed to any witness as to the future development of the community, it is a fair inference from the testimony that the lot in question is situated in a prosperous and growing city and country.

Besides, the evidence all shows that the lot is needed as set forth in the complaint. Hence in any event the instruction could not have been prejudicial.

Instruction No. 11 does not assume that ''some witness testified that the plaintiff could afford to pay a higher price for

the property than it was really worth." It was probably unnecessary to caution the jury that an opinion as to the value could not be based upon what the plaintiff could afford to pay for the property, but the hortatory suggestion could not possibly have damaged defendants—assuming that the jurors were honest and intelligent men. It may be added that the instructions as to the measure of compensation were full and accurate.

We deem it unnecessary to notice specifically the instructions proposed by defendants and which were refused by the court. We think as far as they embraced a correct principle of law and were applicable to the facts they were sufficiently covered by the charge which was given.

The only other point worthy of notice is made for the first time in the closing brief of appellants and it could therefore be properly disregarded. However, we have given it attention. The contention is that "it is essentially necessary that the jury should find that the taking is necessary *for a public use*" while "the verdict as it stands is necessary *for the use of the plaintiff*."

Quotation is made from the opinion of Judge Cooley, in *Mansfield etc. R. Co.* v. *Clark,* 23 Mich. 519, wherein it is said: "We think also that the verdict of the jury is defective in that it does not find the necessity for the taking of this property for the public use. What they say is that 'it is necessary that said real estate and property should be taken for the purpose of said company.' This is not the finding required by the constitution, either in form or substance."

The case here, however, is quite different. There were two questions presented to the jury besides the one as to the value of the property. These questions and the answers returned are as follows: "Question One. Is the taking of the property described in the complaint and sought to be condemned necessary to the use of plaintiff for a permanent freight and passenger depot building? Answer: Yes. Question Two. Is it the purpose and intention of plaintiff to build, construct and maintain the railroad described in plaintiff's complaint? Answer: Yes."

The inference necessarily follows that the land is necessary for a *public use* since the use "for a permanent freight and passenger depot building" in connection with the operation

and maintenance of "the railroad described in plaintiff's complaint" is fixed by the statute as a "public use." In the Michigan case, no purpose whatever was specified while here the purpose designated is necessarily a public purpose for which the right of eminent domain can be legally exercised.

We think no sufficient reason has been suggested for a reversal and the judgment is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 16, 1914.