## UNITED STATES v. BLOCK.
### No. 11282.

Circuit Court of Appeals, Ninth Circuit.
March 22, 1947.

---

David L. Bazelon, Asst. Atty. Gen., James M. Carter, U. S. Attorney, of Los Angeles, Cal., and Roger P. Marquis, Attorney, Dept. of Justice, of Washington, D. C., for appellant.

Dechter, Hoyt, Pines & Walsh, B. L. Hoyt and Harry A. Pines, all of Los Angeles, Cal., for appellee.

Before GARRECHT, MATHEWS and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from a judgment which, in a condemnation proceeding, awarded to appellee, Sam Block, amounts aggregating $22,254 as compensation for property taken from appellee for the use of appellant, the United States.

This proceeding was instituted in compliance with a request made by an assistant secretary of Reconstruction Finance Corporation, an agency of appellant, hereinafter called R.F.C., pursuant to a resolution adopted by the board of directors of R.F.C. on September 18, 1942. The resolution stated, in substance, that Defense Plant Corporation, an agency of appellant, deemed it necessary to acquire for the use of appellant certain land, which the resolution described,[1] in Los Angeles County, California, and had requested R.F.C. to cause condemnation proceedings to be instituted for that purpose. Accordingly, the resolution authorized and directed the secretary or an assistant secretary of R.F.C. to request the Attorney General to cause such proceedings to be instituted.

The land described in the resolution included the land covered by an oil and gas lease from W. H. Comstock, receiver of United States Building & Loan Association of Los Angeles, to H. G. Spengler dated November 13, 1934, and by subleases from Spengler to Colly Oil Company dated February 26, 1935, and March 8, 1935. By the terms of the lease, there was reserved to Comstock as landowner's royalty 16⅔% of the total production of the leased land. By the terms of the subleases, there was reserved to Spengler as overriding royalty 13⅓% of such total production. Prior to September 18, 1942, appellee acquired from Colly Oil Company all its rights under the lease and subleases and acquired from Spengler the right to a part of his overriding royalty, namely, 10-7/12% of the total production of the leased land. The leased land had on it an oil well which appellee operated and some machinery and equipment which appellee owned and used in operating the well.[2] By the terms of the lease and subleases, appellee had the right to remove his machinery and equipment from the leased land.

This proceeding was instituted by filing a complaint on September 28, 1942. Thereby appellant sought condemnation of the land described in the resolution.[3] Upon reading the complaint, the court below, on September 28, 1942, entered an order granting appellant immediate possession of said land. On October 26, 1942, appellant filed a declaration of taking which stated, in substance, that said land was thereby taken for the use of appellant.[4]

On October 4, 1943, the board of directors of R.F.C. adopted an amendatory resolution which stated, in substance, that Defense Plant Corporation had taken possession of,

---

[1] The description was in an exhibit attached to and made part of the resolution.

[2] Appellee's machinery and equipment included a derrick, an engine, a pump, tanks, tubing, casing, pipe, sucker rods and many other items.

[3] The description was repeated in the complaint.

[4] See 40 U.S.C.A. § 258a.

and desired to acquire by condemnation, certain machinery and equipment, which the amendatory resolution described.[5] Accordingly, the amendatory resolution authorized and directed the secretary or an assistant secretary of R.F.C. to request the Attorney General to take such action as might be necessary to effect such acquisition. The machinery and equipment described in the amendatory resolution included all of appellee's machinery and equipment except two tanks.

On January 12, 1944, an amended complaint was filed in this proceeding. Thereby appellant sought condemnation of the land described in the resolution of September 18, 1942,[6] and all personal property which, on September 28, 1942, was located on said land and used or useful in operating any oil or gas well thereon or in treating, storing or disposing of the product of any such well.[7] The property thus sought to be condemned included the leased land and all of appellee's machinery and equipment.

█ In the leased land, there were several interests—appellee's leasehold interest and royalty interest, the interests of Comstock and Spengler or their successors in title and possibly others. Hence appellant could have had the amount of the award for the leased land first determined as between appellant and all persons claiming any interest therein, after which the respective rights of such persons in and to the award could have been determined.[8] Appellant never sought to have the amount of the award for the leased land so determined, nor was any such determination had. Instead, there was a jury trial, participated in by appellant and appellee, to determine the amounts to be awarded to appellee. The jury's verdict was that, on September 28, 1942, the market value of appellee's leasehold interest, including his machinery and equipment,[9] was $20,397, and that, on the same date, the market value of appellee's royalty interest was $1,857. These amounts were awarded to appellee by the judgment here appealed from.

Appellant specifies as error the admission of testimony of Abraham Rubin and J. D. Rush, witnesses for appellee. Rubin testified that the market value of appellee's machinery and equipment[10] in October, 1943, was over $22,000. Rush testified that it was approximately $18,000.

█ Appellant says that the machinery and equipment were trade fixtures and, as

---

[5] The description was in an exhibit attached to and made part of the amendatory resolution.

[6] The description was repeated in the amended complaint.

[7] The amended complaint stated:
"That the property which [appellant] by this action intends and seeks to take, acquire and condemn, hold and own includes the following: All pipe, machinery, appliances, equipment, tanks, structures, tools, supplies and all other property, whether real or personal, which were located in or upon [said land] on the 28th day of September, 1942, and which on said day were used, or were useful, in the operation of any oil and/or gas wells upon [said land] or in the treating, storing or disposing of the products of any of such wells.

"That [appellant] is unable to determine at this time how much of the property generally described in the last preceding paragraph is to be deemed part of the real property on which it is located, for the reason that [appellant] does not know the terms of the oil and gas leases under which said property was placed upon the premises for the purpose of producing oil and gas therefrom; and

[appellant] therefore designates all of said property as personal property and trade fixtures, solely for the purpose of identifying the same as part of the property to be taken in this proceeding, and will ask leave of court to amend this [amended] complaint accordingly if and when it shall be ascertained that any of the property herein designated as personal property and trade fixtures is, in fact, part of the realty upon which it is located."

Appellant never asked leave to amend, and never amended, the amended complaint.

[8] See 40 U.S.C.A. § 258; California Code of Civil Procedure, § 1246.1.

[9] Described in the verdict as "the leasehold estate of [appellee], including all the production facilities and equipment used on said date in the operation of the well."

[10] In the testimony of Rubin and Rush, appellee's machinery and equipment were called personal property. In the verdict and judgment, they were called production facilities and equipment. In appellant's brief, they are called oil well improvements.

between appellant and appellee, were part of the land, and that testimony as to their value, separate from the land, was therefore inadmissible. It is clear that the machinery and equipment were either trade fixtures or personal property, and that, whether trade fixtures or personal property, they were taken by appellant. If they were personal property, appellee was entitled to receive, as compensation for them, their market value at the time they were taken. If they were trade fixtures, he was entitled to have their value considered in determining the value of his leasehold interest.[11]

In support of its contention that the testimony of Rubin and Rush was inadmissible, appellant cites City of Los Angeles v. Klinker, 219 Cal. 198, 25 P.2d 826, 90 A.L.R. 148, and Vallejo & Northern R. Co. v. Home Savings Bank, 24 Cal.App. 166, 140 P. 974. No lease or leasehold interest was involved in either of those cases. Hence neither of them is in point here.

Appellant says that the machinery and equipment were taken on September 28, 1942, and that testimony as to their value in October, 1943, was therefore inadmissible. There was and is some uncertainty as to when the machinery and equipment were taken. As stated above, the complaint was filed and an order granting appellant immediate possession of the land was entered on September 28, 1942, and a declaration of taking was filed on October 26, 1942, but the machinery and equipment were not mentioned in the complaint, the order or the declaration. The machinery and equipment were first mentioned in the amendatory resolution of October 4, 1943. The amendatory resolution stated that Defense Plant Corporation had taken possession of the machinery and equipment, but did not state when such possession was taken. It may have been taken on October 4, 1943.

■ Even assuming that the machinery and equipment were taken on September 28, 1942, it does not appear that appellant was prejudiced by the fact that Rubin's and Rush's valuations were made as of October, 1943. Rush and Graydon Oliver, a witness for appellant, testified that the market value of the machinery and equipment in October, 1943, was substantially the same as on September 28, 1942. That testimony was not contradicted.

■ In proceedings of this character, a judicial discretion in admitting or rejecting evidence as to value is vested in the trial court, and where no abuse of that discretion is shown, such rulings should not be disturbed on appeal.[12] There is here no showing that the trial court abused its discretion. We conclude that the admission of the testimony of Rubin and Rush was not reversible error.

■ Appellant specifies as error the rejection of a telegram offered in evidence by appellant. The telegram was from Leo Nielson, an assistant secretary of R.F.C., to Eugene D. Williams, an assistant to the Attorney General, and was dated March 26, 1945. It stated, in substance, that the amendatory resolution of October 4, 1943, was properly construed by the Department of Justice as an adoption and ratification of the act of Defense Plant Corporation in taking possession on September 28, 1942, of the property described in the amended complaint, including appellee's machinery and equipment.[13]

The telegram was objected to by appellee on the ground that it was incompetent, irrelevant, immaterial, a self-serving declaration and an attempt "to usurp the province of the court in construing the legal steps theretofore taken by [appellant]." The objection was properly sustained.

■ Appellant says that the verdict and judgment are not supported by the evidence. Appellee testified that, in September, 1942, the market value of his leasehold interest, exclusive of machinery and equipment, was

---

[11] City of Los Angeles v. Hughes, 202 Cal. 731, 262 P. 737; People v. Ganahl Lumber Co., 10 Cal.2d 501, 75 P.2d 1067; People v. Klopstock, 24 Cal.2d 897, 151 P.2d 641.

[12] United States v. Becktold Co., 8 Cir., 129 F.2d 473; United States v. Prettyman, 4 Cir., 142 F.2d 891.

[13] Actually, as we have pointed out, the date on which Defense Plant Corporation took possession of appellee's machinery and equipment was not stated in the amendatory resolution and cannot be ascertained from the record.

$35,000; that the market value of his machinery and equipment at that time was $22,000; and that the market value of his royalty interest at that time was $6,000. Walter J. Crown, a witness for appellee, testified that, in September, 1942, the market value of appellee's leasehold interest, exclusive of machinery and equipment,[14] was approximately $11,000, and that the market value of his royalty interest at that time was $3,120. The testimony of appellee and Crown, even though we disregard that of Rubin and Rush, amply supports the verdict and judgment.

Judgment affirmed.

---

[14] In the testimony of appellee and Crown, appellee's machinery and equipment were called personal property and trade fixtures.