[S. F. No. 2172. Department One. — May 25, 1901.]

VINCENT NEALE, Special Administrator, etc., Respondent,
v. A. E. HEAD, Appellant.

LIFE INSURANCE COMPANIES — GUARANTY FUND — STATUTE PART OF
NOTES. — The provisions of the act of April 2, 1866, relating to the
establishment of a guaranty fund for mutual life insurance compa-
nies incorporated under that act, requiring such fund to consist of
the notes of solvent parties, approved by the board of directors and
by each other, and declaring that such notes, or the proceeds
thereof, shall remain with the company, and not be withdrawn
without substituting another note of equal solvency, nor without
the unanimous approval of the board of directors and of all the
other parties liable on the rest of the notes, must be considered as
if written into each of the guaranty notes, and as giving to each
note-maker the right to require their enforcement as to all other
note-makers.

ID. — RIGHTS OF GUARANTORS — SURETIES — NON-LIABILITY TO CORPORA-
TION — UNPROTECTED SUCCESSOR IN INTEREST. — The makers of the
guaranty notes are the mere sureties of the corporation and its
stockholders for the payment of the company's debts, and are
entitled to stand upon the very letter of their contract. They are
liable to unpaid creditors of the corporation, unless discharged by
non-compliance with the statute; but they cannot be held liable
to the corporation merely, nor to its unprotected successor in
interest.

ID. — ACTION UPON GUARANTY NOTE — INSUFFICIENT COMPLAINT. — In an
action upon a guaranty note of a mutual life insurance company
incorporated under the act of April 2, 1866, brought by the suc-
cessor in interest of the insurance company, a complaint which
does not show that the plaintiff is a protected purchaser of the
note, or that he is a creditor of the company, or an assignee of a
creditor or creditors thereof, or that any of the requirements of the
statute respecting the guaranty fund were complied with, is insuffi-
cient to sustain the action.

ID. — FINDINGS — VIOLATION OF STATUTE — DISCHARGE OF GUARANTOR. —
Where the answer in such action averred numerous departures
from and violations of the statute regulating the guaranty fund,
and the findings sustained the answer, and showed that numerous
guarantors were discharged from liability without the substitution
of any note, money, or property, and without the consent of the
defendant, the defendant is thereby shown to be discharged from
liability, and the action cannot be sustained.

ID. — PURCHASE OF NEGOTIABLE GUARANTY NOTE AT JUDICIAL SALE —
CAVEAT EMPTOR. — The purchaser of a negotiable guaranty note of
a mutual life insurance company of this state, at judicial sale, takes

it under the rule of *caveat emptor*, and holds it subject to all equities existing against it in the hands of the original maker or assignor. Such purchase is not a transfer in due course.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. W. R. Daingerfield, Judge.

The facts are stated in the opinion of the court.

Garber, Boalt & Bishop, Bishop & Wheeler, Thomas B. Bishop, and William Rix, for Appellant.

Vincent Neale, for Respondent.

VAN DYKE, J.—The appeal is taken from the judgment and also from the order denying defendant's motion for a new trial.

The action was brought in the superior court of the city and county of San Francisco, by one Joseph E. Shain, for whom the present plaintiff was substituted as plaintiff at the trial. The action is founded upon a promissory note of the defendant, constituting one of the so-called guaranty notes, of which the following is a copy:—

"OFFICE OF THE CALIFORNIA MUTUAL LIFE INSURANCE COMPANY.
"$5,000.          SAN FRANCISCO, Jan. 6, 1868.

"Five days after actual demand, for value received, I promise to pay to the order of the California Mutual Life Insurance Company the sum of five thousand dollars, in United States gold coin, with interest at the then legal rate from and after such demand.          A. E. HEAD."

The case was heard in the court below on the second amended complaint, filed by the original plaintiff, and the answer thereto, and the supplemental complaint, substituting the present plaintiff.

The California Mutual Life Insurance Company was incorporated in the year 1867, under an act of the legislature of this state, entitled "An act to provide for incorporation of mutual insurance companies for the insurance of life and health and against accident. Approved April 2, 1866." (Stats. 1865–66, p. 752.) After obtaining the guaranty fund as provided by said act, the said insurance company engaged in business, and carried on the same during the years 1868, 1869, 1870, 1871,

and 1872. In the year 1873 it sold out its business to the Republic Life Insurance Company of Chicago, an Illinois corporation, and ceased to do further business. In 1885, said insurance company being insolvent, proceedings in involuntary insolvency were, on the 7th of March of that year, commenced against it, and thereafter it was adjudicated insolvent, and the court decreed, among other things, that the assets of the insolvent, including the notes constituting the guaranty fund, should be sold, and in pursuance of said decree said notes were, by the assignee, sold; the note of the defendant being sold to one James H. Dobinson for three hundred dollars, who, as alleged in the second amended complaint, transferred and assigned the same to the original plaintiff; and, September 22, 1888, on demand being made on defendant, and refusal to pay, the action was commenced in 1891; and the original plaintiff, before the trial, transferred the claim to the present plaintiff. By the act under which the company was organized and operating, a guaranty fund of not less than two hundred and fifty thousand dollars is required, which "shall consist of the notes of solvent parties, approved by the board of directors and by each other," which notes so given by any one person should not exceed the sum of five thousand dollars, exclusive of interest. It is also provided that when the fixed capital of the company shall have been obtained, a sworn declaration of the amount and nature of the same shall be filed with the original certificate of incorporation, and "until such time no guaranty note shall be withdrawn from the fund, unless another note of equal solvency shall be substituted therefor, and unless with the unanimous approval of the board of directors then in office, and of all of the other parties liable on the rest of the notes comprising the guaranty fund." In this case there were fifty notes of five thousand dollars each. There is no averment in the complaint of compliance with any of these requirements. The contrary, however, is expressly alleged in defendant's answer, and the findings substantially support the allegations of the answer. The findings show that five of the guaranty notes were, during the existence of the company, surrendered to the makers of the same, and withdrawn from the said guaranty fund, without any substitution or attempt at substitution of other securities, and without the knowledge, approval, or consent of the defendant. It is also found that eight of the makers of said guaranty notes had died, and had left solvent

estates sufficient to pay their respective notes and other debts, and that the company neglected and failed to present any claim whatever against the estate of said deceased solvent note-makers, or to take any steps whatever for the collection of the same, until the same had become barred by limitation; that said company, without the approval, consent, or knowledge of the defendant, transmitted all of said notes constituting said guaranty fund, including the note in suit, to the Republic Life Insurance Company, a corporation existing under the laws of the state of Illinois, without substituting or procuring to be substituted therefor any note, money, or property whatever; that, after the commencement of this action, and without defendant's approval or consent, said company surrendered to the makers thereof thirty-two of said notes, constituting said guaranty fund, without any substitution of other notes or security, other than the execution of a bond in the sum of twenty-five thousand dollars, in favor of the assignee in insolvency.

The appellant contends,—1. That, having made the note in suit on certain conditions, he is not liable, because the conditions have not been complied with; and, being a guarantor, is discharged from liability, in consequence of the acts and transactions referred to as having been found by the trial court; 2. That the claim, if any ever accrued, is barred by limitation.

1. The note in suit, as already shown, was given in pursuance of and in accordance with the provisions of the statute of 1866. Among the other provisions of that act, it is declared that such notes, or the proceeds thereof, should remain with the company, and should not be withdrawn from the guaranty fund without substituting therefor another note of equal solvency, nor without unanimous approval of the board of directors, and all of the other parties liable on the rest of the notes. These provisions of the law must be considered as having been written into the note, and they are in harmony with the general rules of law for the protection of a surety or guarantor. Each note-maker had the right to require that there should be, in all, fifty solvent note-makers, each of the sum of five thousand dollars, and it was also his right to have that number of such solvent note-makers continue, subject to the same conditions and liabilities as himself. The reason of this provision in the law is very obvious. The corporation and its stockholders are primarily liable for the company's debts.

(*Morrow* v. *Superior Court*, 64 Cal. 383.) The parties who executed the guaranty notes are the mere sureties of the company and its stockholders for the payment of the company's debts (*In re California Mut. Life Ins. Co.*, 81 Cal. 364); and, as sureties, each note-maker, if required to pay in discharge of the company's debts, is entitled to contribution from such note-makers as may not have paid an equal amount. As a guarantor, the defendant is entitled to stand upon the very letter of his contract. (Brandt on Suretyship, 2d ed., secs. 93, 254; *Miller* v. *Steward*, 9 Wheat. 680, 702, 703; *Tomlinson* v. *Simpson*, 33 Minn. 443, 446; *Independent District* v. *Reichard*, 50 Iowa, 98.)

It was held in *In re California Mut. Life Ins. Co.*, 81 Cal. 364, that this guaranty fund was liable only for the debts of the company, and as an additional security to the parties dealing with said company, over and above the liability of the company and its stockholders; and as · between the makers of these notes and the company and its stockholders, the money paid by stockholders cannot be made a charge upon such guarantors. It is very clear, therefore, that the company could not have maintained an action on this note under the circumstances, and there is nothing to show that the plaintiff is, or that his assignors were, creditors of the company. It is alleged in the second amended complaint on which the case was tried, " that, pursuant to said decree, the said note was sold to one James H. Dobinson, who transferred and assigned it to this plaintiff," and in the supplemental complaint, after averring the appointment of the plaintiff as special administrator of the estate of James Laidley, deceased, it is said, "that since the commencement of this action, to wit, in the month of November, 1895, Joseph E. Shain, the original plaintiff in the above-entitled action, transferred to the plaintiff, as special administrator of the estate of James Laidley, deceased, the promissory note sued upon, and all his right, title, and interest in the above-entitled action." The title to the note in question passed from the insurance company, to which it was originally given, to Dobinson, by means of a judicial sale, and from him by mesne assignments to the present plaintiff. The plaintiff therefore stands in no better position than the company itself would have stood, had it brought suit on the note. The finding of the court that Dobinson transferred to the executors of Laidley in extinguishment of a

claim against the insolvent. company, held by said estate of James Laidley, deceased, is altogether outside of the issues raised in the pleadings, and is therefore without support.

One who buys at judicial sale a negotiable promissory note takes it under the rule of *caveat emptor*, and holds it subject to all equities existing against it in the hands of the original maker or assignor. It is not a transfer in due course. (2 Parsons on Notes and Bills, pp. 46 et seq.; Rorer on Judicial Sales, 474; Civ. Code, sec. 312; Code Civ. Proc., sec. 368.) The small price paid for the note at such sale would indicate that the purchaser so understood it.

For the foregoing reasons, bearing upon the first point relied upon by appellant, we are of the opinion that upon the findings of the court within the issues raised by the pleadings the defendant was entitled to judgment. This view of the case renders it unnecessary to consider the other points made by appellant. Judgment and order reversed.

Harrison, J., and Garoutte, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank, and filed the following opinion on June 26, 1901:—

BEATTY, C. J., dissenting.—I dissent from the order denying a rehearing of this case.

By the act under which the California Mutual Life Insurance Company was incorporated (Stats. 1865–66, p. 752), it was forbidden to make any insurance until it had a cash capital of at least one hundred thousand dollars fully paid up, and a guaranty fund of two hundred and fifty thousand dollars, composed of the promissory notes of solvent parties, approved by the board of directors and by each other,—no note to exceed five thousand dollars. Such notes were required to be payable absolutely and at all events, at the company's option, and to be negotiable, in order that they might be indorsed and transferred, or converted into cash, or otherwise dealt with by the company in its discretion, without reference to any contingency of losses, expenses, or otherwise. And it was provided that such notes, or the proceeds thereof, should remain with the company as a fund for the better security of its dealers, and should be assets of the company, liable for its

debts, obligations, and indebtedness, next after its assets from premiums and other sources, exclusive of capital stock, until the net earnings of the company over and above its expenses, losses, and liabilities should have accumulated in cash, or securities in which the net earnings had been invested, to a sum which, with the capital stock, should be equal to the aggregate of the original amounts of the guaranty fund and of the capital stock, which should thereupon become and remain the fixed capital of the company not subject to division, etc.

And it was further provided, that until the fixed capital had been so accumulated, and the fact formally proven and published, no guaranty note should be withdrawn from the fund without the substitution of another note unanimously approved by the directors then in office, and by all the other notemakers. (See Stats. 1865–66, p. 752, secs. 8, 9, 10.) By these provisions, and others of similar tendency, the legislature sought to protect the policy-holders and other creditors of such insurance companies by exacting the creation of an inviolable fund, out of which their claims should be payable; but, according to this decision, the whole purpose and policy of the law can be frustrated by the unlawful act of the corporation in surrendering or canceling a single one of the guaranty notes without compliance with the conditions prescribed in the statute. Without any fault on the part of the policy-holders or other creditors of the corporation, five sevenths of the fund which the legislature has been at such pains to create for the satisfaction of their demands is swept out of existence by an act of the directors which is expressly forbidden by law.

It would seem that there is some fault in the logic which can achieve so startling a result, and the fault, I think, is not far to seek. It consists in assuming as the basis of the argument that the corporation *can* surrender or cancel one of the guaranty notes without observing the conditions prescribed by the act. I think, on the contrary, that any such attempt would be clearly *ultra vires*, void, and nugatory. The corporation might cancel and surrender the note, but the act, being forbidden by law, would be of no legal efficacy. The maker of the note would remain liable, notwithstanding the attempted release, and notwithstanding the actual surrender of the paper upon which the note was written. In a suit to enforce payment for the benefit of creditors, or contribution for the benefit of his co-sureties, no court would listen for a moment to the plea that the note had

been canceled or surrendered. The ready answer would be, that the corporation had no power to release it or surrender it; that it had never been held by the corporation for its own benefit, but in trust for the security of others; and that the attempt to withdraw it was an attempted fraud. If these views are correct, the whole basis of the Department opinion is swept away. No wrong was done to the defendant in this case by the withdrawal of the notes of other guarantors, because their liability remained just the same as before. And as to the neglect of the corporation to present claims against the estates of deceased note-makers, it may be answered that the surviving note-makers could themselves have made such claims, and it was their duty to do so if they desired that protection. The opinion of the Department seems to assume, in reference to this point, that if one of several sureties dies solvent, the survivors are all discharged, if the obligee fails to present a claim against the estate of the decedent. No authority is cited to sustain the proposition, and it is clearly in conflict with the principle decided in *Sichel* v. *Carillo*, 42 Cal. 493, and the cases there referred to, and the later cases approving the same doctrine. There is therefore no basis for the conclusion that the failure of the corporation to present claims against the estates of deceased note-makers released the survivors; and unless we are prepared to hold that an act done in defiance of express statutory inhibition is legally effective, there was no release of any surviving note-maker by the surrender of their notes.

It is also, in my opinion, a fundamental misconception of the act of 1866 to suppose that the execution of the guaranty notes created the ordinary relation of surety and obligee between the makers and the corporation. They were sureties *for* the corporation, not *to* it; and the notes, though payable to the corporation, were held—or if collected, the proceeds were held—for the benefit of the policy-holders and other creditors. The corporation, as to the notes, was a trustee for the benefit of others; and even if there had been no express statutory inhibition, the makers of the notes, knowing the fiduciary capacity in which the corporation held them, would have been guilty of a fraud in withdrawing them, and could not thereby have avoided their liability to the beneficiaries.

Another distinction between these guarantors and ordinary sureties is that they were not gratuitous obligors. They were,

CXXXIII. Cal.—4

with respect to the receipts and income of the corporation, far more favored than the ordinary stockholders, who contributed the cash capital of a hundred thousand dollars. The stockholders could receive no dividends unless there were profits, but the makers of the guaranty notes, without paying in a dollar, were to have a "commission" of five per cent per annum on the amount of their notes, and if they made any payments on their notes, they were to have twelve per cent on the amounts so paid. (Stats. 1865–66, p. 752, sec. 10.) As the amount of the guaranty fund was two hundred and fifty thousand dollars, the commissions paid to the note-makers during the time the company was in business must have been twelve thousand five hundred dollars per annum, or one eighth of the whole cash capital. It is scarcely a matter of surprise that the company became insolvent, and it may be safely assumed that the note-makers drew down their commissions as long as it continued to do business. Their liability, therefore, is a meritorious liability,— a liability arising out of a contract under which they were the principal gainers.

As to the right of the plaintiff to maintain the action, there can be no doubt upon that point, if the assignee in insolvency could have maintained it. His vendor purchased the note at a sale made by the assignee in pursuance of an order of court, and whatever title and right of action the assignee had passed to the plaintiff. The assignee represented the interest of all creditors of the corporation. It was his right and his duty to collect these notes, or under the order of the court to sell them, and to apply the proceeds to the payment of the company's debts. His vendee stands in his shoes, and in enforcing the obligation is just as much a representative of the creditors as the assignee would have been if, instead of selling the note, he had sued upon it.

If the foregoing views are correct, the decision in this case is rested upon principles which will constitute a very inconvenient precedent in future controversies, and for that reason it ought to be reconsidered. It may be that upon some of the other grounds urged by counsel for appellant in their briefs a reversal of the judgment and order of the superior court would be necessary, but as these matters have not been adverted to by the court, it would be idle for me to discuss them.

Temple, J., concurred in the dissenting opinion.