[Civ. No. 4997.   Second Appellate District, Division Two.—April 12, 1927.]

## THE PEOPLE, Respondent, v. MARBLEHEAD LAND COMPANY (a Corporation) et al., Appellants.

[1] EMINENT DOMAIN — PLEADING — SUFFICIENCY OF COMPLAINT — ESSENTIAL ELEMENTS.—In this action in eminent domain for the purpose of acquiring certain lands for state highway purposes, the complaint having contained the elements prescribed by section 1244 of the Code of Civil Procedure, it was not rendered insufficient by failure to state that the proposed right of way was located "in the manner which will be most compatible with the greatest public good and the least private injury," as required by section 1242 of said code.

[2] ID.—FINDINGS OUTSIDE PLEADINGS—ESSENTIAL ELEMENTS—BASIS OF COMPENSATION.—In such action, the trial court did not err in making findings containing elements required by the constitution, and which by virtue of the resolution of the highway commission are conclusively presumed to be true, or upon matters required by section 1248 of the Code of Civil Procedure, and upon which legal testimony was introduced by the parties, even though such findings were not in response to issues specifically made by the pleadings; neither did it err in finding facts not set forth by any allegation of the complaint but which constituted integral parts of the foundation upon which compensation was apparently based and embraced subjects properly considered in arriving at the reasonable market value of the property.

[3] ID. — BASIS OF COMPENSATION — EVIDENCE OF VALUE — SEVERANCE DAMAGE.—In such an action, the basis of compensation is the market value of the land to be taken, and any relevant and material evidence of such value is admissible; and when only part of a tract is taken, the just compensation which the constitution guarantees the owner includes not only the value of the part taken, but also the damage accruing to the residue from the improvement—the owner being entitled to recover the difference between the market value of the entire tract before the taking and the market value of what is left after the taking.

[4] ID.—RAILROAD RIGHT OF WAY—FAILURE TO CONSTRUCT LINE— ENHANCEMENT OF VALUE OF LAND—VALUES—INTENDED USE.—In such action, since the defendant railroad company had not, within the time prescribed by section 468 of the Civil Code, attempted to retain its right of way by the slightest advance toward the

3.   Measure of damages in eminent domain, note, 22 Am. St. Rep. 49.   See, also, 10 Cal. Jur. 338, 340; 10 R. C. L. 128, 162.

construction of a transportation line, it was not improper to conclude that in fact, and as a matter of law for the purposes of the principal question in issue, the market value of the land had not been enhanced by the existence of the alleged easement, as, although the ownership of the land and that of the easement were substantially identical, and it was not impossible that a railroad might yet have been built, damages in eminent domain must be estimated with reference to the use and condition of the land at the time, as well as uses to which it is adapted, and evidence as to what the owner intended to do with the land cannot be considered.

[5] ID.—ISSUES — IMMATERIAL FINDINGS — SURPLUSAGE. — In such an action, if the findings may be said to exceed the bounds of necessary findings upon the issues presented, their validity is not subject to attack upon that ground, since immaterial matters will be treated as surplusage, and disregarded.

[6] ID.—JUDGMENT—APPEAL—PRESUMPTIONS—WEIGHT OF EVIDENCE.— On appeal from the judgment in favor of the plaintiff in such an action, all intendments are resolved in favor of the trial court's decision upon questions of fact, if it is supported by any substantial evidence; and asserted inconsistent, or improbable evidence, or evidence asserted to be contradicted by other evidence of greater weight, is not a ground for reversal.

[7] ID.—LAND VALUES—EVIDENCE—EXPERT WITNESSES.—In an action in eminent domain, plaintiff's witnesses called to show fair market values of lands need not be experts in the severe sense of the term, but it is sufficient to qualify them that they show knowledge and experience regarding lands in the neighborhood; and in this action, plaintiff's witnesses brought themselves within the legal requirements qualifying them to testify as to land values.

[8] ID. — MARKET VALUES OF. LAND — AVAILABILITY FOR PARTICULAR PURPOSE.—In such an action, while available of the property for any particular purposes may be shown, its market value is the ultimate fact sought to be established, and plaintiff is not bound to accept the defendants' theory that the lands are suitable

---

5. See 2 Cal. Jur. 1031.

6. See 2 Cal. Jur. 870; 10 Cal. Jur. 426.

7. Testimony of experts to determine value of property condemned, note, 26 Am. St. Rep. 498, 505, 506. See, also, 10 Cal. Jur. 362; 7 R. C. L. 218.

8. Adaptability of property taken for special purpose as element of damage, note, 85 Am. St. Rep. 297. See 10 R. C. L. 130. Compensation allowable in eminent domain proceedings as affected by adaptability of property for uses other than that to which it is applied by owner, note, 15 L. R. A. (N. S.) 679.

for subdivision, far less to admit that if adapted to that purpose the value therefor is the true measure of their market value.

[9] ID. — AVAILABILITY OF FUNDS — EVIDENCE — TESTIMONY OF STATE OFFICIAL—BANK RECORDS.—In an action in eminent domain for the purpose of acquiring certain lands for state highway purposes, it cannot be said that the personal knowledge of the president of the highway commission of funds under his control is less authentic or weighty than book records of the same fact, made by a third person at the instance of said official; and it is not error to permit said official to testify as to the funds available to pave the highway sought to be established.

[10] ID. — CONFLICTING EVIDENCE — FINDINGS — APPEAL. — In such an action, where plaintiff's witnesses apparently qualified to the satisfaction of the trial court, as experienced real estate dealers and engineers, and there was substantial evidence of their qualifications, it does not lie with an appellate tribunal to say as a matter of law that error was committed below in arriving at conclusions as to facts upon which the evidence was conflicting.

---

(1) 20 C. J., p. 950, n. 60, p. 976, n. 86.   (2) 38 Cyc., p. 1970, n. 7.   (3) 20 C. J., p. 728, n. 37, p. 730, n. 51, p. 732, n. 52, p. 985, n. 70.   (4) 20 C. J., p. 776, n. 4, p. 827, n. 1.   (5) 20 C. J., p. 1121, n. 25.   (6) 20 C. J., p. 1116, n. 8.   (7) 22 C. J., p. 702, n. 56, 59.   (8) 20 C. J., p. 986, n. 73.   (9) 22 C. J., p. 984, n. 97.   (10) 20 C. J., p. 1116, n. 10.

APPEAL from a judgment of the Superior Court of Ventura County. Merle J. Rogers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wm. J. Clark and Richard Hartley for Appellants.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and Lorrin Andrews for Respondent.

CRAIG, J.—The plaintiff and respondent instituted this proceeding in eminent domain for the purpose of acquiring certain lands in the county of Ventura, alleged in its complaint as being necessary to the completion of a system of state highways contemplated by legislative acts of 1909 and 1915, and by section 2, article XVI, of the constitution of the state of California, adopted July 1, 1919.

---

10.  See 2 Cal. Jur. 921; 2 R. C. L. 194.

The constitutional provision last mentioned directed the preparation of forty thousand suitable state bonds in the denomination of one thousand dollars each, bearing interest at the rate of four and one-half per cent per annum, payable semi-annually, and that they be signed, sold, and paid as provided in said act of 1915; and created funds therein designated as the "third state" highway, interest, revolving, and sinking funds. It was also provided, in part, that:

"The moneys of said 'third state highway fund' shall be used by the state department of engineering for the acquisition of rights of way for and the acquisition, construction and improvement of uncomplete portions of the system of state highways prescribed by the act of the legislature approved May 22, 1909, known as the 'state highways act,' and the act of the legislature approved May 20, 1915, and known as the 'state highways act of 1915,' and certain extensions thereof described in said last-mentioned act, and also for the acquisition of the rights of way for and the acquisition, construction and improvement of the following additional highways as state highways: Barstow to Needles; Oxnard to San Juan Capistrano"; and twenty-nine other sections of the intended highway system. "Said additional highways to be located on the most direct and practical routes; provided, however, that twenty million dollars of the moneys in said 'third state highway fund,' or so much of said twenty million dollars as shall be necessary, shall be used for the completion of all of the system of state highways contemplated and provided for in said 'state highways act' and in said 'state highways act of 1915,' and the extensions thereof in said last-named act."

The plaintiff alleged that at a meeting held at Sacramento on November 24, 1922, "the California Highway Commission, acting for and on behalf of the Department of Public Works of the State of California and the State of California, all of its members being present, a majority of the members of said California Highway Commission passed and adopted a resolution," set forth in the complaint *in haec verba,* and which recited, among other things: That whereas said board had theretofore been authorized by the provisions of the constitution, quoted above, to acquire rights of way for and to acquire, construct, and improve a state highway between Oxnard in the county of Ventura, and San Juan

Capistrano, in the county of Orange; and whereas said department deemed it necessary to proceed with the acquisition of title to strips or parcels of land necessary for such purposes; that said strips or parcels were necessary for such use; that public interest and necessity required such acquisition of the same for public use as rights of way for said state highway purposes; that the use of the lands hereinbefore described as and for rights of way for state highway purposes is a more necessary public use thereof than the use thereof or any part thereof for rights of way for railroad purposes; that therefore it be resolved that pursuant to such authority the strips or parcels of land specified were adopted as parts and units in and of the final survey line and location for said state highway, and declared "that such acquisition by the state of California of each, every and all of said described strips or parcels of land as rights of way for integral portions of said state highway is necessary and that such acquisition, in the manner provided by law, of said rights of way be and the same is hereby declared necessary." And said resolution authorized the attorney-general to take all necessary steps to condemn the same. It was further alleged that "all facts, matters and things stated in said resolution of said California Highway Commission were and are true, and there is and at the time of passing and adopting said resolution there was sufficient money in the third state highway fund . . . available to pay for the right of way sought to be acquired by this action"; that bonds to the amount of $24,000,000 had been sold and the proceeds thereof paid into the state treasury to the credit of said fund.

The portion of the real property here involved, as described in the resolution and complaint, consists of a strip eighty feet in width, forty feet each side of a center line extending from a point in the westerly line of lot 3, section 27, township 1 south, range 20 west, San Bernardino base and meridian, in Ventura County, to a point on the boundary line between the counties of Ventura and Los Angeles, and is described by metes and bounds, and alleged to be "a part of a single tract of land."

The resolution embraced other lands, lying in Los Angeles County, which were also declared by the highway commission to be necessary integrals of the same highway.

It was followed, however, by allegations of the complaint that public interest and necessity required the construction and improvement of a highway upon the lands in Ventura County, therein specifically described, and the plaintiff prayed that the use to which *said land* was sought to be taken be declared a public use authorized by law, and its taking necessary to such use.

The defendants demurred generally to the complaint, and also upon asserted grounds of ambiguity and uncertainty in that it could not be ascertained therefrom whether the plaintiff was seeking to condemn the right of way described as lying in Los Angeles County, or that described as being within the boundaries of Ventura County. The demurrer was overruled, and the defendants jointly answered admitting ownership in the defendant Marblehead Land Company of all the lands through which ran the strip sought to be condemned, subject to an alleged easement of the defendant railway company, *which said lands,* they averred, consisted of a narrow strip from one-half to one and one-half miles in width; and the other material allegations of the complaint were denied.

For a special affirmative defense the defendants alleged that all of the property described in the complaint was owned by the defendant Marblehead Land Company, subject to certain easements and leasehold interests; that the county of Los Angeles had caused to be condemned a right of way for county highway purposes through the ranch property heretofore mentioned, lying in said county, had declared on October 15, 1921, that it was open to the public, and that the same ever since had been used for such purposes, "although the legality of said condemnation is now being contested by the former owners of said property." It was further alleged by the defendants that the proposed state highway through Ventura County would not connect with the new Los Angeles County road, and would therefore have no outlet to the south unless continued through defendants' Los Angeles County property, parallel to the Los Angeles County road; that proceedings similar to the instant suit were then pending in Los Angeles County for condemnation of lands of the defendants for a right of way continuing the state road, which suit would be contested. The defendants urged, therefore, by their answer, and at the trial, that

the state right of way herein sought to be taken, paralleling the county highway, and for the same purposes, would not constitute a public necessity; and, further, that it was unnecessary to establish such state right of way through Ventura County, unless it should ultimately be determined that the continuation of the state highway through Los Angeles County was a necessity.

A second and further special defense was interposed by the defendant Hueneme, Malibu and Port Los Angeles Railway, on whose behalf it was alleged that the railway company was the owner of an easement two hundred feet wide for railroad purposes, "paralleling in a general way the contour of the land along the Pacific ocean, on which a right of way is located," and which had been conveyed to it for the ultimate purpose of extending a railroad with lateral connections to the city and county of San Francisco; that "said corporation has expended along said entire right of way a sum in excess of $350,000; that a portion of the land sought to be condemned for state highway purposes herein has already been appropriated to a public use, for railroad right of way," which latter use was more necessary to the public than that to which the plaintiff proposed to devote the property; that such railroad right of way was the only feasible route for a competing line, and that if condemned for state highway purposes it would be impossible to construct a railroad thereon, and would work irreparable injury to said defendant.

The defendant land company prayed judgment in the sum of $150,000, as the value of its property described in the complaint, and $200,000 as damages to adjoining property by the severance; and the defendant railway company prayed judgment for $350,000, alleged value of its property sought to be taken, and for $500,000, as severance damages.

The case was tried before the superior court without a jury, and findings of fact, conclusions of law, and an interlocutory decree were made and entered allowing the first-named defendant $3,000 for its lands condemned, and $1,000 as severance damages; and awarding the defendant railway company $500 as the value of lands taken from it, together with $500 as severance damages.

The innumerable objections interposed by appellants to the initiatory proceedings, the complaint, the evidence, and the

sufficiency thereof, to rulings below, and to the findings, conclusions of law, and judgment, necessitate the foregoing somewhat extended detail of the status of the record before us.

[1] It is first contended that the demurrer should have been sustained, for the reason that the complaint did not allege that the proposed right of way was located ''in the manner which will be most compatible with the greatest public good and the least private injury,'' as required by section 1242 of the Code of Civil Procedure that a right of way shall be located. Section 1244 of the same code specifically provides what the complaint in an eminent domain proceeding must contain, as follows: ''the location, general route, and termini, and must be accompanied with a map thereof, so far as the same is involved in the action or proceeding,'' and that the land shall be described. The complaint here involved contained these statutory elements, and we think it was therefore sufficient. But appellants insist that the quoted limitation as to public good and private injury is a jurisdictional fact which must be pleaded in cases other than those instituted by municipal corporations. Section 1241, subdivision 2, of the Code of Civil Procedure provides as follows:

'' . . . when the legislative body of a county, city and county, or an incorporated city or town, shall, by resolution or ordinance, adopted by vote of two-thirds of all its members, have found and determined that the public interest and necessity require the acquisition, construction or completion, by such county, city and county, or ·incorporated city or town, of any proposed public utility, or any public improvement, and ·that the property described in such resolution or ordinance is necessary therefor, such resolution or ordinance *shall be conclusive* evidence: (a) of the public necessity of such proposed public utility or public improvement; (b) that such property is necessary therefor, and (c) that such proposed public utility or public improvement is planned or located in the manner which will be most compatible with the greatest public good, and the least private injury; . . . ''

Prior to 1925 the statutes creating the California Highway Commission and prescribing its powers and duties did not contain the provision declaring such resolutions of that

body to be conclusive, and appellants argue that it was intentionally omitted, for the reason that the highway commission is not a legislative body of a county, city and county, or incorporated city or town, and that its resolutions are not conclusive.

We do not deem it necessary to the validity or conclusiveness of a resolution of the highway commission that it be characterized as a legislative body. The most direct route, and that compatible with the greatest public good and the least private injury, is necessarily determined by the exercise of discretionary powers, and, as said in *City of Pasadena* v. *Stimson,* 91 Cal. 238 [27 Pac. 604], exercising as they do a public function, the choice of land made by the state or its agents, in the absence of clear and convincing evidence to the contrary, must be presumed correct and lawful. The highway commission in laying out a right of way pursues similar methods and performs like duties to those of a municipal council or board which demand the exercise of sound discretion. ''That the Highway Commission is vested with broad general powers over state highways and the expenditures of moneys provided therefor must be conceded. By the department of engineering law it is given 'full possession and control' over all state highways and 'all expenditures by the state for highway purposes . . . shall be under the full charge of the department.' '' (*California Highway Com.* v. *Riley,* 192 Cal. 97, 108 [218 Pac. 579].) It is true that in 1925 the statutes were amended by adding the following provision:

''Said resolution shall be conclusive evidence:

''(a) Of the public necessity of such proposed public improvement;

''(b) That such property is necessary therefor; and

''(c) That such proposed public improvement is planned or located in the manner which will be most compatible with the greatest public good and the least private injury.''

This provision was applicable at the date of the trial of this case, and as a pleading the complaint was not sufficient in this regard as complying with section 1244 of the Code of Civil Procedure. In advancing their argument appellants confuse an evidentiary issue with one of pleading. If for the sake of argument it be conceded that prior to 1925 the resolution of the California Highway Commission would not

have been conclusive to prove the matters in question, this would not even tend to show that such facts must have been pleaded, especially since the subject of the requirements of the complaint in this character of action is fully covered by section 1244.

The trial court rendered its findings of fact in nineteen separately numbered paragraphs. The italicized portions of six of such paragraphs, therein numbered IX, X, XV, XVI, XVII, and XVIII, the parts of which are material to this proceeding being quoted below, are attacked by appellants upon the ground that they are "outside the issues raised by the pleadings," and are "unsupported by any of the allegations of the complaint."

In paragraph IX the court found: "That the defendant, Marblehead Land Company, a Delaware corporation, is the owner in fee of the land sought to be taken, and that the defendant, Hueneme, Malibu and Port Los Angeles Railway, a corporation, has an easement over certain portions thereof, for right-of-way purposes for a railroad running thereon, but in that behalf the court finds that *the defendant, Hueneme, Malibu and Port Los Angeles Railway, a corporation, did not within two years after the filing of its original articles of incorporation, or at any other time, begin the construction of its railroad or any portion thereof, upon said property, nor has ever put in operation any portion of its road at least five miles or otherwise, upon said property, nor has said corporation ever operated any railroad or railroads for the running thereon of any passenger or mixed or other trains for the carriage of the public or baggage or freight, or for any other purpose whatsoever."*

In paragraph X: "The court further finds that the public use to which said property is to be applied by the plaintiff is a more necessary public use than that to which it has already or heretofore been appropriated, and that *the proposed public improvement is located for the taking of the said lands in the manner which will be most compatible with the greatest public good and the least private injury."*

Paragraph XV: "*The court further finds that having made an inspection of said property by stipulation of counsel, that said property lies along the shore of the ocean and is situated at the extreme southerly point of Ventura county adjacent to the Los Angeles county line, and distant forty-*

*eight miles from Pershing Square in Los Angeles, and over twenty-eight miles from the nearest settlement which is at Los Flores at the eastern end of the Malibu Ranch, and accessible thence over a very different road. That the property is only seventeen miles distant from Oxnard; but there is no road whatever connecting the land with any part of Ventura county except through Los Angeles county."*

Paragraph XVI: *"The court further finds, upon said inspection that at the western end of said land, the mountains come quite close to the shore line and the mesa portion widens out generally toward the east. That the hill portion is quite precipitous and barren and the mesa portion is somewhat broken and cut with gullies. That the land is at present without water and without any apparent practicable source of water, other than about one miner's inch in Sycamore canyon."*

Paragraph XVII: *"The court further finds that the only present use being made of said land is for grazing purposes, although at one time the mesa portion of the land had been farmed to barley and beans."*

Paragraph XVIII: *"The court further finds that the Hueneme, Malibu and Port Los Angeles Railway is a corporation, all of whose stock is owned by the same persons owning the stock of the defendant Marblehead Land Company, and in about the same proportion.* That the said Hueneme, Malibu and Port Los Angeles Railway holds a title to right-of-way over the property which overlaps the proposed right-of-way of the highway for a distance of about 3500 feet, but that *no railway was ever constructed on said land and that no railway is now in operation by said company."*

Section 1248 of the Code of Civil Procedure provides that: "The court, jury, or referee must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:

"1. The value of the property sought to be condemned, and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein; if it consists of different parcels, the value of each parcel and each estate or interest therein shall be separately assessed;

"2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue

to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff;

"3. Separately, how much the portion not sought to be condemned, and each estate or interest therein, will be benefited, if at all, by the construction of the improvement proposed by the plaintiff; and if the benefit shall be equal to the damages assessed under subdivision two, the owner of the parcel shall be allowed no compensation except the value of the portion taken; but if the benefit shall be less than the damages so assessed, the former shall be deducted from the latter, and the remainder shall be the only damages allowed in addition to the value; . . .

"6. If the removal or relocation of structures or improvements is sought, the cost of such removal or relocation and the damages, if any, which will accrue by reason thereof; . . . "

[2] Paragraph X of the findings, as we have seen, contains elements required by the constitution, and which by virtue of the resolution above mentioned are conclusively presumed. A review of the record also discloses that the facts stated in the other five paragraphs, to which exception is taken, are upon matters required by section 1248 of the Code of Civil Procedure to be ascertained, and upon which legal testimony was introduced by the parties.

Although the asserted objectionable facts contained in paragraphs XV, XVI, and XVII were not set forth by any allegation in the complaint, they constitute integral parts of the foundation upon which compensation was apparently based, and embrace subjects properly considered in arriving at the reasonable market value of the property. [3] It has repeatedly been held that the basis for recovery of compensation in such cases being the market value of the land to be taken, any relevant and material evidence of such value is admissible (*Southern Pacific Co.* v. *San Francisco Savings Union,* 146 Cal. 290 [106 Am. St. Rep. 36, 2 Ann. Cas. 962, 70 L. R. A. 221, 79 Pac. 691]; *Oakland* v. *Pacific Coast Lumber Co.,* 171 Cal. 392 [153 Pac. 705]; *Oakland* v. *Adams,* 37 Cal. App. 614 [174 Pac. 947]); and that when only part of a tract is taken, the just compensation which the constitution guarantees to the owner includes not only

the value of the part taken, but also the damages accruing
to the residue from the improvement (*Colusa etc. R. Co.* v.
*Leonard,* 176 Cal. 109. [167 Pac. 878]; *Muller* v. *Southern
Pac. R. Co.,* 83 Cal. 240 [23 Pac. 265]; *Southern Pac. R.
Co.* v. *Hart,* 3 Cal. App. 11 [84 Pac. 218]); that the owner
is entitled to recover the difference between the market
value of the entire tract before the taking, and the market
value of what is left after the taking (*McDougald* v. *South-
ern Pac. R. Co.,* 162 Cal. 1 [120 Pac. 766]; *Sacramento
Southern R. Co.* v. *Heilbron,* 156 Cal. 408 [104 Pac. 979];
*San Francisco etc. R. Co.* v. *Crandall,* 31 Cal. 367).

[4]   Section 468 of the Civil Code provides that a rail-
road corporation may within two years after filing its origi-
nal articles of incorporation begin the construction of its
road, and must every year complete and put in operation
at least five miles of road, until completed; that a failure
to comply with these requirements works a forfeiture of
the right of way, and a reversion of title to the original
owners. Hence, proof by the plaintiff, and findings by the
trial court, that although the servient and dominant estates
in the tract known as the Malibu Rancho were apparently
distinct, yet in fact that both had been owned by the same
persons, and that the latter estate had been forfeited, that
the land was practically arid, distant from any settlement,
and difficult of approach, were obviously indispensable fac-
tors in determining a fair market value. Since the de-
fendant railroad company had not attempted to retain its
right of way by the slightest advance toward the construc-
tion of a transportation line, it would not be improper to
conclude that in fact and as a matter of law for the pur-
poses of the principal question in issue, the market value
of the land had not been enhanced by the existence of the
alleged easement. Owing to the merger of interests it is
not impossible that a railroad might yet have been built,
but damages in eminent domain must be estimated with
reference to the use and condition of the land at the time,
as well as uses to which it is adapted, and evidence as to
what the owner intended to do with the land cannot be
considered. (*Los Angeles* v. *Kerckhoff-Cuzner etc. Co.,* 15
Cal. App. 676 [115 Pac. 654].)

[5]   If, as contended by the appellants, the findings in-
clude points which may be said to exceed the bounds of

necessary findings upon the issues presented, their validity is not subject to attack upon that ground, since immaterial matters will be treated as surplusage, and disregarded. (*Sussman* v. *San Luis Obispo Co.*, 126 Cal. 536 [59 Pac. 24]; *Costa* v. *Silva*, 127 Cal. 351 [59 Pac. 695]; *Neale* v. *Head*, 133 Cal. 42 [65 Pac. 131, 576].)

Appellants advance the argument that certain specified conclusions of law "rest upon immaterial findings of fact," apparently relying upon the assumption that the findings heretofore discussed should have been omitted by the trial court. The findings of fact, as we have observed, must be sustained, and a discussion of this point would therefore necessarily result in but mere repetition.

It is next objected that the findings of fact reciting the proper and valid passage of the resolution by the highway commission, the sale of the bonds, proper survey, selection of route, that the proposed route is more necessary than that to which the property had theretofore been appropriated, and that "all matters, facts and things stated in the resolution of said California Highway Commission are true," were not supported by the evidence.

What has already been said, we think, disposes of this question. The findings mentioned establish elements which the Code of Civil Procedure (sec. 1248) requires must appear, and the record discloses that they are supported by evidence of witnesses, or by presumptions which are expressly by statute pronounced conclusive. [6] Although portions of such evidence are criticised by appellants as assertedly inconsistent, improbable, or contradicted by other evidence of greater weight, these are not grounds for reversal since the trial court had the witnesses before it, and all intendments are resolved in favor of its decision upon questions of fact if, as here, it is supported by any substantial evidence. (*Lindley* v. *Blumberg*, 7 Cal. App. 140 [93 Pac. 894].)

[7] The appellants strenuously urge that it appears from the record that the People's witnesses, called to testify as to market values, had no knowledge of conditions or the fair market price of the lands in controversy, and that hence no foundation was laid for such evidence, and the superior court erred in admitting it over their objections. It appears that the plaintiff's witness Gabbert had resided in Ventura

County for a period of forty years, had engaged in the real estate business for fourteen years, had sold ranch property and subdivided beach property, in said county; that he had viewed the defendants' property during the week of the trial, and he testified that he knew the market value of similar property in Ventura County; the witness Petit, a civil engineer in Ventura County, had appraised estates there and in Santa Barbara County, and while he had subdivided, he based his opinion upon the agricultural value and uses of the land; witness Eastwood testified that he had resided in Ventura County for a period of forty-five years, had dealt in real estate during the past six or seven years, and that for twenty-five years prior to such occupation he had farmed lands in Ventura County; the witness Donlon swore that he had resided in Ventura County during the past fifty-two years, that he was a banker, farmer, and owned some cattle; that he owned several ranches, and loaned money on ranch property, and also had been appointed commissioner to partition a ranch consisting of 22,000 acres.

These witnesses, concededly, were familiar with values in Ventura County, which adjoins Los Angeles County on the north, along the Pacific coast; they averred that some of the lands sought to be condemned were similar to those which they had owned and sold, and their estimates ranged from $15 to $250 an acre, according to location, soil, proximity to the coast, etc. It has been held that witnesses called to show fair market values of lands in such cases need not be experts in the severe sense of the term, but if they show knowledge and experience regarding lands in the neighborhood, it is sufficient to qualify them (*City of Santa Ana* v. *Harlin,* 99 Cal. 538 [34 Pac. 224]; *San Diego L. & T. Co.* v. *Neale,* 78 Cal. 63 [3 L. R. A. 83, 20 Pac. 372]); and that all that is necessary is to show that the witness has some peculiar means of forming an intelligent judgment beyond that which is presumed to be possessed by men generally as to values (*Spring Valley W. W. Co.* v. *Drinkhouse,* 92 Cal. 528 [28 Pac. 681]); such as a banker who has resided in the neighborhood (*Vallejo etc. R. Co.* v. *Home Savings Bank,* 24 Cal. App. 166 [140 Pac. 974]), or supervisors who had acted upon a petition to erect a public improvement (*Siskiyou County* v. *Gamlich,* 110 Cal. 94 [42 Pac. 468]).

We think the plaintiff's witnesses brought themselves within the bounds announced by the decisions of this state.

Appellants seek to strengthen their argument in this respect with the contention that Ventura County contains small country towns, whereas Los Angeles City is a rapidly advancing metropolis; that the appellants' witnesses were extensive subdividers in the latter city, and were versed in the subdivision of lands suitable for use therein, while those who testified for the plaintiff were devoid of such experience. It is urgently insisted that the theory of the defendants was that the land sought to be taken was available for subdivision purposes, that their witnesses knew the value of the land in view of its adaptability therefor, and did not attempt to qualify as agricultural experts, or know the value of land for farming purposes.

[8] While availability of the property for any particular purposes may be shown, its market value is the ultimate fact sought to be established, and the People were not bound to accept the defendants' theory that the lands were suitable for subdivision, far less to admit that if adapted to that purpose the value therefor was the true measure of their market value. Further, our supreme court has held, as heretofore observed by this court in *Los Angeles City High School Dist.* v. *Hyatt*, 79 Cal. App. 270 [249 Pac. 221], that evidence of the value of lands in terms of money for particular purposes such as for subdivision is inadmissible (*Sacramento etc. R. Co.* v. *Heilbron*, 156 Cal. 408 [104 Pac. 979]). The market value of the lands in suit may have appeared to the trial court as no higher than that of any ranch lands of a similar character along the Pacific coast, in adjoining or near-by counties, and we think from the record before us that its rulings were proper, in the respects to which exception was taken by appellants.

[9] It is contended that the trial court erred in permitting plaintiff's witness Darlington to testify over objections of the defendants that the funds in the third state highway fund were sufficient to pave the highway sought to be established, and they assert in support of this proposition that the budget was the best evidence as to such fact. It appeared, however, that this witness was president of the state highway commission, and he was asked on direct examination as to his personal knowledge of the amount. It cannot

be said as a matter of law that the witness' personal knowledge of funds under his control was less authentic or weighty than book records of the same fact, made by a third person, at the instance of the witness. Appellants' assertion that the witness "could not know" the amount is not supported by the record.

The remaining alleged grounds for reversal consist of objections by the defendants to the admission of the resolution of the highway commission, which it is claimed was irrelevant and immaterial, and to the testimony of certain witnesses as to the amount of funds available, as to the value of lands sought to be condemned, and as to the effect of taking the right of way upon the value of surrounding properties. [10] The plaintiff's witnesses apparently qualified to the satisfaction of the trial court, as experienced real estate dealers and engineers, and there was substantial evidence of their qualifications. The witnesses did not agree upon such matters, but it is elementary that since the trial court heard them, and viewed the property, it does not lie with an appellate tribunal to say as a matter of law that error was committed below in arriving at conclusions as to facts upon which the evidence was conflicting.

The judgment is affirmed.

Works, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 12, 1927, and a petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 9, 1927.