[Civ. No. 15993. First Dist., Div. Two. Nov. 17, 1954.]

REDWOOD CITY ELEMENTARY SCHOOL DISTRICT, Respondent, v. KATHERINE GREGOIRE, Appellant.

Ferrari & Ferrari, Louis Ferrari and Currie, Lebsack & Hannig for Appellant.

Keith C. Sorenson, District Attorney (San Mateo), and Lyle R. Edson, Deputy District Attorney, for Respondent.

KAUFMAN, J.—This is an appeal from a judgment after jury verdict in a condemnation suit brought by respondent Redwood City Elementary School District. The jury assessed

the market value of the land with improvements thereon at $83,500, as of November 14, 1952, and judgment was rendered in favor of appellant Katherine Gregoire, in that amount.

The property here sought to be condemned was held in joint tenancy by Louis Gregoire and Katherine Gregoire, his wife, when these proceedings were commenced, but Louis Gregoire had died before the case came to trial. The property had been purchased by the Gregoires in 1923. As Mr. Gregoire was in the cut flower business, the property was used to produce flowers for sale and shipment. Large numbers of acacia and eucalyptus trees were planted on the property for use in the florist business. The Gregoire family also used the property as a summer home. The house, which consisted of six bedrooms, sunporch and kitchen, was enlarged in 1932, and a barbecue with kitchen and a dance hall were added to the property. Attached to the house are workmen's quarters. Also on the property are garage, hay barn, chicken coops and sheep barns.

Albert Gregoire, a son of Louis and Katherine Gregoire, testified in detail concerning the above improvements, as well as the types of soil contained on the property and their adaptability for raising crops of different kinds. He was thoroughly familiar with the property, and had been in business with his father. He was at the time of trial living in San Bruno, California, and was still in the business of flower grower and florist. The witness estimated that the property was about five blocks distant from a new market, a little more than a mile from a new shopping center at Five Points, and about two miles from the Southern Pacific station in Redwood City.

All of the experts who testified agreed that the highest and best use of the property would be for a residential subdivision of single-family residences. A zoning ordinance permitted construction of single-family residences in this area with building sites of a minimum of 6,000 square feet. Appellant's witness Riley estimated that the tract could be divided into 63 lots according to a plat which he had prepared, while respondent's witness Ingram in his plat arrived at 65 lots. The witnesses gave the following estimates of the market value of the property:

| | |
|---|---|
| Frank J. Graff, for appellant | $146,760 |
| Ralph Riley, for appellant | 153,000 |
| David Ingram, for respondent | 78,750 |
| J. Mortimer Clark, for respondent | 78,400 |

Appellant contends first that the evidence is insufficient to support the verdict. It is argued that only appellant's witness Graff testified as to the value of the lots that would result if the property was subdivided, and that Graff's estimate of $146,760 was arithmetically demonstrated. Appellant says that it was the duty of respondent to contradict this testimony if it were not correct, and that in not doing so the district acquiesced in Graff's figures. This argument assumes that the jury were bound to accept the figures of Graff if they were not directly contradicted as to the market value of the property if used as a residential subdivision. Graff's evaluation of the property was for use solely as a residential subdivision. The expert witnesses of respondent, Clark and Ingram, did not base their estimate of market value on residential subdivision use only, but took into consideration other factors, such as the possibility of its continued use for commercial growing of flowers, sales of property in the same general area which were studied and compared with the subject property in the light of the possible uses to which the property could be adapted. Listings of comparable properties at a number of real estate offices were also examined, inquiry made as to how long they had been listed, subdividers and developers were consulted to determine what they would be willing to pay for this property, and the data was analyzed in arriving at market value. Appellant's argument would seem to imply that market value in this case must be fixed solely with reference to the single use of the property as a residential subdivision. It is well settled in this state that fair market value is to be arrived at by considering all the purposes for which the property is adaptable. In the recent case of *People* v. *La Macchia,* 41 Cal.2d 738, 751 [264 P.2d 15], it was said: "This court 'has definitely aligned itself with the great majority of the courts in holding that damages must be measured by the market value of the land at the time it is taken, that the test is not the value for a special purpose, but the fair market value of the land in view of all the purposes to which it is naturally adapted . . .' " (And see *Sacramento etc. R. R. Co.* v. *Heilbron,* 156 Cal. 408, 412 [104 P. 979]; *City of Los Angeles* v. *Cole,* 28 Cal.2d 509, 518 [170 P.2d 928]; Orgel on *Valuation Under Eminent Domain,* § 30, pp. 98-102.)

In the instant case there is simply a conflict in the evidence between the experts for appellant and respondent. The divergence in estimates of market value was not nearly

so great in this case as it was in *City of Daly City* v. *Smith,* 110 Cal.App.2d 524 [243 P.2d 46], in which case the appellate court held that as to the sufficiency of the evidence, such case presented merely a conflict in the evidence. The jury here exercised its discretion, and awarded appellant $5,000 more than the highest estimate of respondent's experts, and that verdict cannot be set aside as unsupported. (*City of Fresno* v. *Hedstrom,* 103 Cal.App.2d 453, 461 [229 P.2d 809].)

Appellant complains of error committed by the trial court in refusing to permit appellant's son, Albert Gregoire, to give his opinion as to value. This witness testified that he had had charge of the property since 1945 for his father, that numerous people had asked to buy the property, that it was wanted by the Archbishop of San Francisco for school purposes, and by numerous subdividers, but that the property was never for sale. He was asked by his counsel: "Mr. Gregoire, with all the knowledge that you have, with regard to this property, and the discussions you have had with people who have wanted to buy, and your keeping in touch with the developments that have gone on there, and the availability of this property for subdivision purposes, and applying all the knowledge that you have learned in regard to it over these long years since 1924, I understood you to say, what in your opinion is the value of it?" The court sustained the objection to the question. The court asked if he was the owner. Counsel replied that he was the agent of the owner, and evidently referring to Mrs. Gregoire the owner, said, "This lady can't take the stand. She is not in a position to do so." The court then said: "The law says owners or experts," to which counsel replied: "Or his agent." The court: "Are you going to argue with me all during this trial?" Counsel: "I haven't so far." The court: "I think you have. The objection is sustained." Counsel: "Very well, your Honor."

Appellant says that the court cut him off, preventing further argument, and that he intended to demonstrate that the witness was qualified not only as representative of the owner, but by reason of his familiarity with the property. Appellant admits that no case has been found where an agent has been permitted to testify for the owner in this type of case.

In the present case the owner of the property was in court. The record does not show why, as counsel stated, she was not in a position to testify. The trial court is the judge of the qualifications of the witness to testify as

to land values. (10 Cal.Jur. 1021-1022, § 277.) Clearly, the witness here could not qualify as owner. Counsel in the exchange with the court quoted above, did not attempt to show that the witness was specially qualified to judge the market value of this land apart from his attempt to show that he stood in the same position as the owner. The remark of the court appears to mean that the court considered the subject closed as far as showing that the agent of an owner was competent by reason of the fact of agency. The court then asked if there were any more questions from the witness, and counsel apparently had none, for he told counsel for respondent to cross-examine. Furthermore, the question propounded to the witness did not call for the fair market value of the property. The question was therefore insufficient in form and the objection was good on this ground, also.

Appellant contends that the judge was in error in stating that only owners and experts are competent witnesses as to value. Witnesses competent to testify as to value in such cases need not be experts ''in the severe sense of the term'' as said in *People* v. *Marblehead Land Co.,* 82 Cal.App. 289, page 303 [255 P. 553], ''but if they show knowledge and experience regarding lands in the neighborhood, it is sufficient to qualify them (citations); and that all that is necessary is to show that the witness has some peculiar means of forming an intelligent judgment beyond that which is presumed to be possessed by men generally as to values (*Spring Valley W. W. Co.* v. *Drinkhouse,* 92 Cal. 528 [28 P. 681]); such as a banker who has resided in the neighborhood (*Vallejo etc. R. Co.* v. *Home Savings Bank,* 24 Cal.App. 166 [140 P. 974]), or supervisors who had acted upon a petition to erect a public improvement. (*Siskiyou County* v. *Gamlich,* 110 Cal. 94 [42 P. 468]).''

Appellant cites from *People* v. *La Macchia,* 41 Cal.2d 738, 746 [264 P.2d 15], the following: ''All that is necessary to be shown to entitle a witness to give an opinion is to show 'that he has some peculiar means of forming an intelligent and correct judgment as to the value of the property in question . . . beyond what is presumed to be possessed by men generally.' '' But in the same paragraph and immediately following this the court continues: ''The usual expert is qualified by proof of his familiarity with the property and with other property in the neighborhood, his experience in the business, his familiarity with the state of the market and of sales of similar property in the vicinity. (Citation.)

A property owner, on the other hand, is generally considered competent to estimate the value of his property upon a showing that he has resided thereon for a number of years.''

The trial court was the judge of the qualifications of the witness. The court was correct in its conclusion that he was not qualified by reason of his agency for the owner who was present in court. It appears that ownership, in itself, regardless of knowledge, makes the testimony of the owner admissible. It was said in *Isenberg* v. *Sherman*, 212 Cal. 454 [298 P. 1004, 299 P. 528], that owners, whether generally familiar with such values or not, are competent to testify as to value, the lack of knowledge going to the weight rather than to the admissibility of their testimony, and that this applies alike to real and personal property. (And see Orgel on *Valuation Under Eminent Domain*, § 130, p. 441, n. 44.) It does not appear that a sufficient foundation had been laid to establish this witness as one peculiarly qualified to judge the market value of this property, even if counsel had brought it to the attention of the court that he was attempting to qualify him on this basis. He had said that the property had never been for sale, although he stated several parties had wished to buy it. There was no showing made that he knew the market values of property in the vicinity. Appellant had two witnesses on the issue of value who qualified and gave their testimony. Appellant, the owner, was not prevented from testifying. It does not appear, therefore, that appellant was prejudiced by the court's ruling.

■ It is contended that appellant was prejudiced in having his opening statement curtailed by the court when he attempted to go into the history of Mr. Gregoire, deceased. The court stated that the evidence was to be confined to the value of the property. Counsel said that the Supreme Court cases in these matters contained complete histories of the persons. The court then said to counsel, ''I know you are a great orator, but I am not going to listen to your speeches.'' Counsel: ''I was only going to make one.'' The Court: ''That is the one I won't listen to.'' Counsel: ''Well, then, I will proceed to show, we will produce evidence here to show that this man bought this property in 1924.'' Counsel then continued to relate the history of the property and the purposes for which it was used by Mr. Gregoire, deceased. The value of the property was the only issue in the case. No prejudice was suffered by excluding additional personal history of Mr. Gregoire. Appellant could not have been prejudiced by the

somewhat jocular exchange between court and counsel quoted above.

Appellant complains also of the court's remark noted above where the court sustained an objection and said to counsel for appellant: "Are you going to argue with me all during this trial?" No objection was made to these remarks by the court nor was there any request for a cautionary instruction. Appellant cannot therefore object to these remarks for the first time on appeal. (*Tossman* v. *Newman*, 37 Cal.2d 522, 526 [233 P.2d 1] ; *Hughes* v. *Hartman*, 206 Cal. 199, 205 [273 P. 560].) Furthermore, the court here instructed the jury to disregard any remark of the court which "seemed to you to reflect upon any counsel or any witness . . ." (See *Wilson* v. *Kopp*, 114 Cal.App.2d 198, 208 [250 P.2d 166].)

Appellant complains of error committed by the trial court in giving the following instructions:

"You are instructed that you are to determine the market value of the 12.23 acre parcel of land as a whole as of November 14th, 1952, and not as if it had been divided into small parcels."

"Evidence, if any, of what an owner might plan to do with the property is not to be considered by you as enhancing its market value."

These instructions are a correct statement of the applicable law. (See *People* v. *La Macchia*, 41 Cal.2d 738, 751 [264 P.2d 15] ; *Sacramento etc. R. R. Co.* v. *Heilbron*, 156 Cal. 408 [104 P. 979] ; *People* v. *Marblehead Land Co.*, 82 Cal. App. 289 [255 P. 553] ; *San Joaquin etc. Irr. Co.* v. *Stevinson*, 63 Cal.App. 767 [220 P. 427].)

Appellant contends it was error to refuse his proffered instruction No. 13: "The market value is determined by taking into account the highest possible use to which the land is or may reasonably be put or be adapted, and what purchasers would be willing to offer for it in view of such highest possible use." This was refused because covered by other instructions given. The court gave complete and fair instructions defining market value. And one instruction stated that if the jury should find the property suitable for subdivision purposes which would enhance its value, that fact should be taken into account in estimating the market value of the tract, and the jury was advised to consider the fact that the zoning ordinance permitted property in the location

to be subdivided into lots of a minimum area of 6,000 square feet. This instruction covered the highest and best use to which the property was adapted, according to the evidence, and stated the law more fully and accurately than did the instruction offered by appellant.

There was no error in the court's ruling that the witness Gregoire could not testify on direct examination as to an offer received for the property. In *People* v. *La Macchia,* the rule is reaffirmed in the majority opinion that upon direct examination "A witness never should be allowed to go into the details of particular offers for the property being condemned . . ." The testimony erroneously admitted in the cited case was held not to have prejudiced the state, but the case clearly held such testimony inadmissible, and is authority for the propriety of the ruling made by the trial judge in the present case.

We find no prejudicial error in the record and accordingly the judgment must be affirmed.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied December 17, 1954, and appellant's petition for a hearing by the Supreme Court was denied January 12, 1955. Carter, J., was of the opinion that the petition should be granted.