[Civ. No. 18085. First Dist., Div. One. Oct. 22, 1959.]

LORRAINE GREGOIRE et al., Appellants, v. REDWOOD CITY ELEMENTARY SCHOOL DISTRICT, Respondent.

Lewis, Field, DeGoff & Stein for Appellants.

Keith C. Sorenson, District Attorney (San Mateo), and Lyle R. Edson, Chief Civil Deputy District Attorney, for Respondent.

WOOD (Fred B.), J.—In this action brought by plaintiffs to quiet title to certain land, the defendant school district prevailed. In support of their appeal plaintiffs claim (1) the court failed to make findings on certain issues, (2) the evidence demonstrates an oral gift of the property to the plaintiffs, and (3) the evidence demonstrates that plaintiffs acquired title by adverse possession.

Louis and Katherine Gregoire, husband and wife, acquired this property as joint tenants in 1924. Louis died in September, 1952. In November, 1952, the defendant school district filed a condemnation suit against Katherine. It resulted in acquisition of title from Katherine by judgment entered in June, 1953. She appealed. The appellate court affirmed. The Supreme Court denied a hearing and the judgment became final on January 12, 1955. (See *Redwood City etc. School Dist.* v. *Gregoire,* 128 Cal.App.2d 766 [276 P.2d 78].)

In November, 1955, plaintiffs, the 12 children of Louis and Katherine, filed this action. They pleaded ownership in general terms as is usual in a complaint to quiet title. They predicated title upon an asserted oral gift to them from Louis and Katherine. In their closing brief they advanced the additional claim of title by adverse possession against the defendant district.

(1) *Did the court fail to make findings of fact on certain material issues? No.*

Plaintiffs mistakenly claim the court failed to find on the question whether or not Louis and Katherine orally gave them this property.

The court expressly found the allegations of the answer true and of the complaint untrue except, as to the latter, that the plaintiffs had been in possession and that the defendant claimed an interest in the property. This, by reference to those allegations, a finding that since June 30, 1953, the defendant district has been and is sole owner of the property in fee simple absolute and that the plaintiffs have no title or right to it, is a sufficient finding of ultimate fact on that subject in a suit of this nature. (See 41 Cal.Jur.2d 580-582, Quieting Title, etc., § 82, and cases there cited.)

Similar findings in respect to the allegations of the district's cross-complaint and Katherine's answer thereto include a finding that Louis and Katherine did not give this property to the plaintiffs and that the plaintiffs do not own it.

In addition, the trial court expressly found that "the

evidence as to the said oral gifts is vague, uncertain, indefinite and unsatisfactory; that none of the elements required to relieve the transfer from the statute of frauds is present, and that this is not a case wherein equity can or should intervene by recognizing or enforcing said oral gifts,'' and that ''the evidence is insufficient to enforce the alleged oral gifts. . . .''

The plaintiffs say that the findings just quoted do not amount to a finding of the asserted ultimate fact that Louis and Katherine did not make an oral gift of the property to their children and reflects an erroneous view and application of the law, a view that more than a preponderance of evidence is required to establish such a fact. We are not persuaded, especially in view of the general findings above mentioned. A finding that the evidence is ''vague, uncertain, indefinite, and unsatisfactory'' is not inconsistent with a finding that an oral gift was not established *by a preponderance of the evidence.* Such terms are not mutually exclusive, each of the other.

 (2) *Does the evidence support the finding that no gift of the property was effected? Yes.*

The plaintiffs, of course, had the burden of proof on this question. In support of their claim that they fully met that burden, to the extent, indeed, of demonstration as a matter of law, they cite testimony favorable to their view of the case.

The district brings to our attention evidence of opposite import. For example, there is some uncertainty as to when the asserted gift was made. One of the plaintiffs thought it was in 1921. Upon her attention being called to the fact that her father acquired the property in 1924 she said the gift occurred later, 1924 or 1925. Asked if it could have been 1931 instead of 1921, she responded in the affirmative, adding that her father said it belonged to the children, one acre each. (The property was approximately 12 acres in extent and there were 12 children.) Apparently none of the plaintiffs claimed or sought to identify a particular acre as his or her own. Another plaintiff said it was probably in 1932 that she first heard of her interest in the property. It was in 1952 that another plaintiff was told by her father that he had given the property to the children. He did not tell her how long it had belonged to them. That was the first time he ever discussed this matter with her. She had previously heard conversation about the property but had not known whether it was owned by her parents or by her and the other children.

Katherine testified that she and her husband had a conversation in which he said he was giving the property to the children, that each could have an acre apiece, and she told him she was well satisfied with that. Asked if they discussed it with the children, she said ''. . . we did tell the children that the property would belong to them.''

In August, 1952, William G. Moore, interested in subdividing this property and building houses on it, asked Louis if he were interested in selling. Louis said he was the owner but was not interested in selling ''because he intended to give it to his children.''

There is evidence, too, that following the asserted gift there was no apparent change in the method of handling and using the property. In respect to any improvements on the property, Louis paid for the materials and the children participated with friends of the family in the work of construction. One of them testified, ''We all worked as a family,'' and that the buildings after construction were used by the family, parents and children alike.

In addition to these frailties of proof which we derive from the written record, the trial judge had before him all of the witnesses, heard their testimony as it came from their lips, observed their demeanor and made his appraisal of the evidence. There is no basis in the record for us to undertake a reappraisal and a reversal.

■■■ (3) *Does it appear as a matter of law that plaintiffs have acquired title by adverse possession? No.*

Plaintiffs tried the case upon the theory that they acquired title by executed oral gift from their parents Louis and Katherine, not that they acquired it by adverse possession. Even upon this appeal they did not advance the latter theory until they wrote and filed their closing brief. They should have presented it at the trial. Had they done so, the district would have had opportunity to introduce evidence, if any it had or could obtain, on that issue.

■■■ They direct attention to a finding that ''plaintiffs are now and for some time past, have been in possession of the real property particularly described in said complaint.'' With this we must read a finding that ''the possession of cross-defendants . . . [plaintiffs] of said real property is and has been without right and against consent of the said cross-complainant since January 12, 1955.'' Also not to be overlooked is the finding that the allegations of the answer to the

cross-complaint are untrue. It includes a finding that the allegation that plaintiffs have been in possession since 1935 is untrue.

This determination that plaintiffs were not in possession, except for a period after January 12, 1955, when judgment in the condemnation suit became final, finds support in the evidence. Louis, the record owner, came on the property daily. He at times collected the rent. Proceeds derived from the sale of plants grown on the property were deposited in the family account. Funds from this account were used for family household expenses. It is inferable that plaintiffs used the property with the consent of Louis and Katherine, not adversely.

Moreover, section 325 of the Code of Civil Procedure requires an adverse user to pay the taxes levied on the property if he wants that use to ripen into a prescriptive title. There is evidence that taxes continued (until acquisition by the district) to be assessed to Louis and Katherine, the record owners. It also appears that the taxes were paid from the family account. Sometimes Louis personally paid the taxes. At times the plaintiffs contributed from their personal funds therefor. Who contributed what share and over what period is a matter of conjecture. The record is devoid of proof that plaintiffs *personally* paid the taxes on the property for a *continuous period of five years*.

The period of possession after January 12, 1955, was far short of the five-year prescriptive period required by section 325 of the Code of Civil Procedure. Furthermore, had plaintiffs presented this question to the trial court the district might have been able to show that the property was so dedicated by it to the public as not to be subject to loss by adverse use.

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.